Vredenburgh v. Burnet.

CAROLINE VREDENBURGH

*v.*

WILLIAM H. BURNET and others.

1. Priority of record will not give a right of preference in payment to one of two concurrent mortgages, if both are held by the same person.

2. If one of the two is assigned by the mortgagee, upon a representation that it is the first lien upon the premises, such representation will make it so as against the assignor.

3. But as against a subsequent assignee of the other, without notice, such representation is a secret equity by which he will not be bound.

4. An assignee of a mortgage takes it subject to all the defences which the mortgagor, or those who have succeeded to his rights, may urge against it, but free from secret equities created by the mortgagee in favor of third persons.

5. Whatever puts a party upon inquiry, amounts, in judgment of law, to notice, provided the inquiry became a duty, and would, if pursued, have led to a discovery of the requisite fact.

On final hearing on bill, answer and proofs.

*Mr. Aram G. Sayre*, for complainant.

*Mr. Joseph Coult*, for defendant.

THE VICE-CHANCELLOR.

The only point disputed in this case is, which of two mortgages is entitled to be first paid. They were both made

May 20th, 1871, by the same mortgagor, to the same mortgagee, and cover the same premises. Both have since been assigned. That now held by the complainant was assigned May 22d, 1871, and recorded the next day, May 23d; the other was recorded May 22d, 1871, and remained the property of the mortgagee until August 21st, 1873, when he assigned it to the defendant, William H. Burnet.

Both mortgages having been executed at the same time, and both being the property of the same person at the time the one now held by the defendant was recorded, the fact that one was recorded on one day and the other on the next, did not change them from concurrent to successive liens. Priority of record will not give a right of preference in payment to one of two concurrent mortgages, if both are held by the same person. Though recorded at different times, they still remain concurrent liens. *Gausen* v. *Tomlinson, 8 C. E. Gr. 406.* Such mortgages are not within either the letter or policy of the registry acts; they provide simply for successive liens, not concurrent. They are statutes of notice, their principal design being to give each successive mortgagee notice of what burdens precede his; but where two mortgages are taken at the same time, by the same person, on the same lands, recording them will inform him of nothing he does not already know. To protect himself against liens subsequently acquired, he must make them matters of record; but it is not possible for him, by recording one before the other, to raise against himself a sufficient right or equity to be the fit subject of the protection of the law. If, on a sale of the mortgaged premises, a sum sufficient to pay both is not raised, his loss must be the same, whether he leaves them as they are, concurrent liens, or attempts to treat them as successive liens. Up to the time the mortgagee assigned the one now held by the complainant, both mortgages unquestionably held equal rank, and were entitled to be paid concurrently.

Their position has, however, since been changed. The mortgagee testified that, at the time he negotiated the sale

Vredenburgh *v.* Burnet.

of the one now held by the complainant, he was informed by the person who negotiated the purchase that the moneys he held for investment were trust funds, and he would purchase nothing but a first mortgage. He says he thereupon stated that the mortgage he wanted to sell was a first mortgage. This, undoubtedly, as between the mortgagee and any subsequent holder of that mortgage, gave it the superior rank as against the mortgage he retained. His representation invested the mortgage he sold with an equity, as against the one he retained, that he would never be permitted to question or destroy. But does his assignee stand, in this respect, where he does? In other words, did the defendant acquire title to his mortgage charged with the equities to which it would have been subject in the hands of his assignor? The established doctrine of this court is, that the assignee of a mortgage takes it subject to all the defences which the mortgagor, or those who have succeeded to his rights, may urge against it, but free from latent or secret equities, created by the mortgagee in favor of third persons. *Losey* v. *Simpson, 3 Stock. 254; Woodruff* v. *Depue, 1 McCart. 175; Lee* v. *Kirkpatrick, Id. 264; Starr* v. *Haskins, 11 C. E. Gr. 415; De Witt* v. *Van Sickle, 2 Stew. 212; Putnam* v. *Clark, Id. 415.* A concealed defect or secret equity, arising from the conduct of those who previously owned the property, of which the purchaser had no notice, cannot be set up against him. *Danbury* v. *Robinson, 1 McCart. 219.* Where two persons holding successive mortgages, recorded in the order of their execution, agree, by writing, that the first shall stand second in order of payment, and the holder of the one made second by the agreement subsequently assigns it to an innocent purchaser for value, upon a representation that it is first in order of priority, such agreement is a latent or secret equity, and is without force against a *bona fide* assignee. No caution or diligence which it is possible for the most careful purchaser to exercise, will enable him to discover a secret arrangement of this nature, and, unless notice of it is brought home

to him, he will not be bound by it. *N. Y. Chemical Mfg. Co.* v. *Peck, 2 Hal. Ch. 37.* A contrary rule would render mortgages practically inalienable. No such consequences, however, attend the other branch of the rule, for it is always easy for an assignee, before purchasing, to inquire of the mortgagor, or of those who have succeeded to his rights, whether or not its validity will be disputed.

When the equity resides in the debtor, it may be easily discovered by the exercise of ordinary caution; but when it resides in a stranger to the transaction which gave birth to the mortgage, and does not appear in the papers, nor on the records, its discovery, if possible at all, is a pure matter of chance. Unless it has been shown that the defendant was, at the time of his purchase, chargeable with notice of the arrangement by which his mortgage was made subordinate to that of the complainant, it is clear, I think, that he holds his mortgage free from any equity created by that arrangement.

Did the defendant have such notice? The mortgaged premises consist of two city lots, lying adjacent, one with a dwelling on it and the other vacant. The defendant says that, at the time he purchased his mortgage, the mortgagee told him that the mortgage now held by the complainant was the first lien on the dwelling-house lot, and that the other mortgage was the first lien on the vacant lot. This constituted, at least, partial notice of the arrangement. Both mortgages were then matters of public record; the defendant must be charged with notice of every fact properly constituting part of the record, and he must, also, be assumed to have known what the law was. When, therefore, he was informed that the mortgage now held by the complainant was the first lien on the dwelling-house lot, and that the other was the first lien on the vacant lot, he was bound to understand that an arrangement had been made between the parties, subsequent to the execution of the papers, different from that which existed between them by force of the papers. Without such information, he had a

Vredenburgh *v.* Burnet.

right to rely upon the papers. Looking simply at them, or at the record of them, he had a right to understand that the mortgages stood as concurrent liens; but when he was informed that they had ceased to hold to each other the relation which the law would assign to them, and that their position had been changed from concurrent to successive liens, as to certain portions of the mortgaged premises, by agreement of the parties, he received sufficient notice of the arrangement under which the complainant claims, to put him upon inquiry, and to make it his duty to apply for further information. The mortgagor was his copartner. He had always paid the interest for the mortgagor on the complainant's mortgage, and when he was informed that the original position of the mortgages had been changed by agreement, he knew just where to apply for full information. If he chose to refrain from doing so, and to purchase, relying entirely upon the representations of his assignor, I think he has no right to ask the complainant to bear the consequences of his own folly. He admits notice of the arrangement; he complains simply because he did not know that it was understood that the complainant's mortgage should be the first lien on the vacant lot as well as the other. Notice of any part of the arrangement was sufficient, in my judgment, to put upon him the duty of seeking full information of the holder of the other mortgage, and, if he failed to perform it, and loss ensued, he must bear it as the consequences of his own fault. Whatever puts a party upon inquiry, amounts, in judgment of law, to notice, provided the inquiry became a duty, as in the case of purchasers and creditors, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding. *Hoy* v. *Bramhall, 4 C. E. Gr. 572.*

The complainant's mortgage must be adjudged the first lien on the whole of the mortgaged premises.