This is a bill in the nature of an interpleader. The complainants sought a mortgage on their property through one Kleinman. The defendants Chirelstein and Bell, and also defendant Leskowitz, all of whom had made loans through Kleinman before, examined the property and agreed to make the loan. On October 14th, 1924, complainants and the defendants Chirelstein and Bell met in Kleinman's office. Complainants executed a mortgage, and, at least, one bond. Chirelstein and Bell thereupon gave complainants checks for the agreed upon consideration, about $1,700. Complainants supposed, as did Chirelstein and Bell, that the mortgage ran to Chirlestein and Bell, Kleinman so reading the instruments aloud to them. Neither complainants nor defendants can read or write English. The bond and mortgage were, in fact, payable to Kleinman; were acknowledged before one Stalford, an attorney-at-law, and recorded the following day. Kleinman gave defendants a bond stating it ran to them, and that he would send them the mortgage after it was recorded. The husband denies that he signed this bond. As to this I think he is mistaken, as a careful reading of the testimony convinces me that he did, in fact, sign it. On October 15th Kleinman executed an assignment of the mortgage to defendant Laskowitz, receiving therefor $1,700 from one Lubetkin, Laskowitz's son-in-law and attorney. This was recorded on October 20th. A month or so afterwards Chirelstein and Bell had the bond they held read to them, and found it ran to Kleinman and not to themselves. They demanded an explanation and Kleinman executed an assignment to them dated November 17th, 1924, and recorded January 19th, 1925. The mortgage is now in the possession *Page 616 
of Laskowitz. It does not appear how he got it. Kleinman has absconded.
Laskowitz contends that he is entitled to the money paid into court because his assignment was first recorded, and that he is not chargeable with notice of the other assignment. That might be if complainants has executed a mortgage to Kleinman, and Kleinman had paid them $1,700, and then assigned for value to Laskowitz, and the latter had recorded it; and it later appeared that Chirelstein and Bell theretofore, relying upon some authority to Kleinman, had taken an assignment from Kleinman but had not recorded it. The situation here is different. The defendants relied on the representations of the complainants. Complainants say they thought they were executing, and meant to execute, a bond and mortgage to Chirlestein and Bell, and it is undisputed that Chirlestein and Bell then and there gave them checks for, approximately, $1,700. The witness Stalford says he read the contents of the papers to complainants before they signed and informed them that the obligee was Kleinman. He says he read the papers verbatim and told them the due date. The papers have no due date. I think he is mistaken in saying he made the complainants understand the mortgage ran to Kleinman. They are illiterate and ignorant people, and the reading of long, legal documents verbatim would mean little to them. I am convinced they thought they were giving the mortgage to Chirlestein and Bell, and that Chirlestein and Bell were equally sure that they were paying $1,700 for a mortgage to themselves.
The equity here is one existing against the mortgage in the hands of the original obligor, and Laskowitz is bound thereby.
"The purchaser for value of a chose in action is bound by the equities existing against it in the hands of the original obligor." Putnam v. Clark, 29 N.J. Eq. 412; affirmed, 33 N.J. Eq. 338.
Moreover, I believe that Laskowitz had sufficient notice of the transaction between complainants and defendants Chirelstein and Bell to make it obligatory on him to investigate. *Page 617 
Had he done so, Kleinman's intended fraud would have been frustrated. He was in Kleinman's office while this transaction was going on. A simple question would have disclosed the fact that it was not the intention of the parties to make Kleinman the mortgagee. Five days intervened between the date of the assignment to him and its record. He knew the mortgagors and had visited them at the property in question.
"It is always easy for an assignee before purchasing to inquire of the mortgagor, or of those who have succeeded to his rights, whether or not its validity will be disputed. If he chose to refrain from doing so, relying entirely upon the representations of the assignor, I think he has no right to ask the complainant [in this case the co-defendants] to bear the consequences of his own folly." Vredenburgh v. Burnet, 31 N.J. Eq. 229; affirmed,34 N.J. Eq. 252.
I will advise a decree that the money in court be paid to Chirelstein and Bell.