HAYS, *Appellant*, v. BAYLISS.

82 209
96 290
82 209
88a 399

1. **Practice in Supreme Court**: REFEREE'S REPORT. The Supreme Court will not interfere with the judgment of the lower court on the finding of a referee, where the evidence taken before him has not been preserved.

2. **Evidence, Destruction of**: INFERENCE. Every inference is to be drawn against a party to a suit guilty of destroying or mutilating documentary evidence.

*Appeal from Lafayette Circuit Court.*—HON. WM. T. WOOD, Judge.

AFFIRMED.

*J. D. Shewalter*, for appellant, argued that the finding of the referee was erroneous.

*Alexander Graves* and *A. F. Alexander* for respondent.

It is the settled practice in the Supreme Court of this State that it will not interfere with the judgment of the court below, unless the evidence is preserved. *Bonnot v. Party*, 59 Mo. 98; *Routsonz v. Railroad Co.*, 45 Mo. 237. Since the year 1840 no finding of facts can be embraced in the judgments of inferior courts, and if embodied therein, cannot be regarded by this court on appeal. *Martin v. Martin*, 27 Mo. 227; *Brosius v. McGaugh*, 27 Mo. 330; *Gist v. Eubank*, 29 Mo. 248. The finding of the referee was right.

NORTON, J.—This suit was instituted in the circuit court of Lafayette county for the purpose of settling a partnership between plaintiff and defendant, entered into in 1869 and continuing till 1871. The petition alleges that the accounts were unsettled; avers that upon settlement a large balance was due plaintiff; and asks that an account be taken and judgment rendered for the amount claimed to be due. The answer is a general denial.

14—82

The case was referred to Mr. Blackwell with directions to take the account and report his action to the court. After taking, as stated in the report, eight hundred pages of evidence, he made his report, according to which the firm had made large profits and left plaintiff in debt to defendant in the sum of $4,993.71. Various exceptions were filed to this report by both parties, some of which were sustained and some overruled, and resulted in a re-reference to the referee of an item of charge " to cash from daily cash sales, as per cash book, $28,996.34," and, also, as to an item of $9,588.79, " cash collected on accounts credited on ledger but not entered on cash book." It was contended that the latter item of charge was included in the former and for the purpose of ascertaining the correctness of this claim, the re-reference was made. The referee made his second report and found that the above charge of $9,588.79 was included in the larger charge and in restating his account left the item out, and found that the firm had lost $2,276.74, and that defendant was indebted to plaintiff in the sum of $1,138.37. To this finding of the referee both plaintiff and defendant again filed exceptions, which were taken under advisement by the court till its next term, when some of the exceptions were overruled and some sustained, resulting in a modification of the statement by withdrawing the item of $2,276.74 reported as a balance of loss and adding an item of $3,663.93, which the court found had been omitted from the statement by the referee, which left plaintiff in defendant's debt $693.57, for which judgment was rendered, from which plaintiff appeals and we are asked on this appeal to pass upon the questions involved, in the absence of the evidence taken by the referee.

The following extracts made from the reports of the referee, after the case had been in his hands for about two years, will suggest sufficient reasons why we decline to do so. He states that, in his investigations, he took some eight hundred pages of testimony and that after giving

the books of the partnership, as well as the evidence taken in the cause, a full and complete examination, he now reports, even after all this investigation, that it is most difficult, if not impossible to reach a correct conclusion and finding as to how the parties stand in relation to their partnership business; at least the referee doubts his ability to solve and settle the many difficult issues involved in the suit to his satisfaction. The books of the partnership and all business relating thereto were found in the utmost confusion, the books abounding in erroneous entries and being scratched, erased and defaced. From the ledger several pages containing important accounts and facts have been entirely torn, and it may be remarked as a very significant fact that four of these missing pages from the ledger contained the accounts of J. P. Triplett, who had clerked for the firm during almost its entire existence, and who figures largely in the settlement of some important issues involved in this controversy. Another difficulty to be overcome in arriving at a correct finding in this case, and the investigation thereof, is the fact that there were no written articles of partnership existing between the parties, and the testimony of the parties, plaintiff and defendant, (they being the only witnesses to the contract) is so very conflicting and contradictory that it is difficult to arrive at a correct understanding of the terms and conditions upon which the parties agreed to do business as partners. In fact neither of the parties can fix the date of the partnership or the time of the dissolution thereof; both agree, however, that the partnership commenced some time in March, 1869, and was dissolved some time in September, 1871.

The referee, in his second report which was finally acted upon by the court, says: "The magnitude and importance of the issues involved in this suit, and the settlement of this partnership warn and admonish the referee to be careful in his finding, and he regrets extremely that he cannot say when his report is made that it is susceptible

of mathematical demonstration; more than this, the referee reports and states, as a matter of fact, that neither he, nor any one else, be that other ever so skilled in the art and science of book-keeping, can possibly strike a correct balance between the accounts of plaintiff and defendant, because of the absence of a part of their ledger, and because of the many erroneous and unexplainable entries found on the books, as well as the conflicting oral evidence given in the cause."

When the above statements are considered, and the further fact is taken into account, that the court after some months of consideration of the report and all the evidence before it, reached the result announced in the judgment, we must decline to pass upon the questions involved, in the absence of the evidence shedding light on the partnership transactions and guiding the referee and court to the final conclusion arrived at. If with this light before them they blundered, we, being deprived of it, would be most likely to commit greater blunders. Besides this, it appears that the entire business of the partnership was in the hands and under the control of plaintiff, and from the mutilated, torn, erased, scratched condition of the books, every inference favorable to defendant should have been drawn, and drawing such an inference, had the referee charged to the firm the item of $9,588.78, which he omitted from his second statement of account, we would not with the lights now before us have interfered with it.

Judgment affirmed, in which all concur, Judge Hough concurring in the result.