DROSTEN *et al.* v. MUELLER *et al.*, *Appellants.*

DIVISION ONE.

1. **Declaration of Trust**: EVIDENCE. The evidence in this case *held* to show that defendant executed and delivered to her brother a declaration of trust in his favor upon land conveyed by him to her, and that the evidence further shows that said declaration, which had been destroyed, provided that she was to have the land in the event that she outlived him.

2. **Spoliation**: PRESUMPTION AGAINST DESTROYER OF PAPERS. The spoliation of papers raises a presumption against him who destroys or mutilates them, but such presumption is one of fact and not of law and may be overcome by other evidence.

3. ———— : ————. The presumption arising from the spoliation of papers must be applied with judgment and sound discretion, and it will be overcome in a case where a woman destroyes a declaration of trust in favor of her brother, where she was told by him upon his deathbed to do so, and where the evidence shows she was threatened with suit, and that she had no intention of committing a fraud upon anyone.

4. **Practice in Supreme Court:** CHANCERY CASES. The supreme court, in chancery cases, gives weight to the finding of the trial court, where that court had the parties and witnesses before it, and that deference will, in doubtful cases, turn the scale ; but where it is satisfied the trial court erred in its finding of facts, in chancery cases, it will act upon its own finding as to the facts.

*Appeal from St. Louis City Circuit Court.*—HON. JAMES A. SEDDON, Judge.

REVERSED.

*Alex. Martin* for appellant.

(1) How Mary Mueller held the property on the sixth of October, 1879, when she acquired title, is a matter of no moment, except in so far as it bears upon the question as to how she held it on the ninth of May, 1887, when she sold it to Julia A. Hafner. The allegation in the pleading of an express trust in writing in favor of Geo. C. Mueller is a very important one and estops the plaintiff from proving up, or relying at the trial upon, an implied trust resulting from the supposed payment of the consideration by Mr. Geo. C. Mueller. A resulting trust arises from the proof of certain facts, such as the payment of the consideration by one and the conveyance to another, and is imposed on a purchaser against his will, But there can be no implied trust where there is an express trust, either by word or writing. The law never implies. The court never presumes a trust but in case of absolute necessity. This is an infallible rule. *Cook v. Fontain*, 3 Swanst. 591–592 ; 1 Spence, Eq. Jur. 496 ; *Graves v. Graves*, 9 Foster, 129 ; *Vander v. Yates*, 9 N. Y. 219 ; *Levermore v. Aldrich*, 5 Cush. 431 ; *Bellasis v. Compton*, 2 Vernon, 294 ; *Green v. Cates*, 73 Mo. 115. The plaintiff cannot rely upon an implied trust after having alleged an express trust. The express trust displaces the implied one. (2) Having alleged an express declaration of trust in writing, the evidence, if any, tending to raise an implied or

resulting trust, is irrelevant to the issues of the case unless it bears upon, or tends to establish, the express trust alleged in the petition. This trust cannot be proved by facts which demonstrate the probability or propriety of it. An express trust in writing must be proved up like any other instrument in writing. The instrument not being produced, its existence should be proved by the testimony of persons who have seen it. (3) The evidence of the contents of the lost paper does not go to sustain the trust declared in the petition, which is an absolute and unqualified one as to enjoyment during life and absolute ownership in fee simple descending to his heirs and devisees. (4) The evidence goes strongly to sustain the version of the written instrument as given by Miss Mueller, to the effect that it provided the property should go to Geo. C. Mueller for life and absolutely in fee if she died first; if he died first to go absolutely in fee to her. (5) In deciding the case below against defendants, the court laid great stress upon the act of Miss Mueller in destroying the instrument; and held that she, by her conduct, had afforded good ground for inferring that the instrument must have been against her interests, otherwise she would not have destroyed it. But it is clear that her conduct cannot be regarded in the light of an actual spoliator, for the reason that she acted in pursuance of directions from her brother who was the moving cause of the conveyance to her. The inference from Miss Mueller's conduct under these circumstances ought not to be allowed to take the place of actual proof of the contents of the instrument. This would be clothing a doubtful presumption with the force of an actual fact. (6) The issue presents the question of an express trust, or no trust at all. (7) Besides, the facts appearing in evidence go strongly to rebut the implication of a resulting trust, without reference at all to the fact that there was a written declaration of trust. *Jackson v. Feller*, 2 Wend. 465.

*James O. Broadhead* and *H. A. Haeussler* for respondents.

The court below has decided that respondents have established the trust. In an equity case, where the trial court has the witnesses personally before it, and there is abundant evidence to sustain its findings, the supreme court will not interfere and reverse such findings, unless it is clear it should have been otherwise. *Judy v. Bank*, 81 Mo. 404 ; *Erskine v. Loewenstein*, 82 Mo. 301 ; *Russell v. Adkins*, 24 Mo. App. 617 ; *Chapman v. McIlwrath*, 77 Mo. 43 ; *Hodges v. Black*, 76 Mo. 537 ; *Boyle v. Jones*, 78 Mo. 403 ; *Berberett v. Edina*, 19 Mo. App. 550.

BLACK, J.—This was a suit brought by Rosa Drosten and her husband against Mary M. Mueller and Julia A. Hafner, to vest in the plaintiffs the title to a parcel of land in the city of St. Louis. The decree being for plaintiffs, the defendants appealed.

The property was sold under a deed of trust, and purchased by John H. Wright, on the fifth of August, 1879, for the consideration of $20,364, and he conveyed the premises to Thomas Wright and the defendant, Mary M. Mueller, by a deed dated the sixth of October, 1879, which recites a like consideration. George C. Mueller paid one-half of the purchase price, but had the deed for his interest made to Mary M. Mueller, his sister.

George C. Mueller died in April, 1887, leaving a will, and, by a codicil, he bequeathed to each of his three sisters $4,000, Mary being one of them. He devised the rest and residue of his property to his wife and children. He survived his wife, and died leaving the plaintiff Rosa as his sole heir and residuary devisee. The value of the entire estate is estimated at $200,000. The will was probated on the second of May, 1887, and

on the ninth of the same month Mary M. Mueller conveyed the one-half of the property held by her to the defendant, Mrs. Hafner, for the consideration of $9,500. This suit was commenced on the thirteenth of the same month. The plaintiffs allege that Mary M. Mueller, on the sixth of October, 1879, the date of the deed to her, signed and acknowledged a declaration of trust, whereby she certified that she held the title for the use of George C. Mueller; that the writing which evidenced the trust had been lost; that the deed to Mrs. Hafner was made in fraud of the rights of the plaintiffs, all to the knowledge of Mrs. Hafner when she purchased.

The plaintiffs declare upon an express trust only, and, therefore, do not rely upon a resulting trust, so that it becomes necessary to determine whether there was a written declaration of trust, and, if there was one, then what were its terms. On these issues it is necessary to recite much of the evidence.

Mary Mueller was a maid, sixty years old, at the death of her brother. They were German people. He had provided her with a small home and contributed to her support. She washed the linen used at the saloon which was carried on by Mr. Mueller and Thomas Wright in part of the premises in dispute. The other rooms were leased out in the names of Wright and Mary Mueller, but Mr. Mueller received all of the rents and used the same without accounting to her therefor, and paid taxes and repairs. Mr. Drosten, one of the plaintiffs and the administrator of the Mueller estate, found an envelope in the box of the deceased at the Safe Deposit Company, with the following directions thereon in the handwriting of the deceased: "Private papers of Mary M. Mueller. Please deliver to her. G. C. Mueller." He delivered the envelope to her and requested her to open it, but she declined to do so. He says he asked her if she had a deed to the property or had made one, and she said she had not. He then spoke of the evidence of an acknowledgment, hereafter mentioned,

and she said: "Well, I don't know." He advised her to go to a lawyer and have the matter fixed up, at his expense.

The witness Runder says he saw Mary Mueller at her house on the first or second Sunday after the death of Mueller; that she showed him an envelope in which there was a document and a slip of paper; that the document had a notarial seal on it, and, he thinks, was signed by her; that she asked him to read it, but he did not; that the slip of paper had words written upon it in German, meaning "destroy. this," or "destroy this paper."

The deposition of Mary Mueller was read in evidence by the plaintiff. She says, when her brother put the property in her name he said it was hers—"my property;" that he paid for it for her. Being asked concerning an acknowledgment taken by Robertson on October 6, 1879, she said: "Well, there is my brother and a man, I don't know who it was, and they brought the paper and he read it to me and I did not understand what it was, and I signed my name, so if I should die the property would go back to him; if I died first the property would go back to him." * * * "Signed it at my house." "That paper meant that if I should die before he did it should go to him, and if he died first it should be mine." She admits that she received the envelope from Drosten, but says it contained her private papers; that it did not have in it the paper which she signed at the request of her brother and the notary; that she had never seen that paper since she signed it. She says she destroyed her private papers which were in the envelope, and that she never showed them to anyone. Says she did not speak to her brother about the property on his deathbed, but he spoke to her and said it was her property; that he spoke of the agreement and said "it was in his safe deposit and should be destroyed." It appears she consulted Mr. Green, an attorney, who had transacted business for her brother.

She then concluded to sell the property. She says, "Drosten threatened me and said he was going to sue me and make a heavy lawsuit and a good deal of expense, to lose all I had, and, therefore, I sold it."

Mr. Robertson, being shown the deed to Mary Mueller and Wright, testified that it was acknowledged before him; that on the same day, October 6, 1879, he went to Mary Mueller's home and took her acknowledgment; and that he then, as was his custom, made a memorandum of the contents of the deed which she signed. This memorandum was offered in evidence by the plaintiff but excluded by the court. The defendants, however, made it part of the evidence in cross-examination, and it is in these words: "October 6, 1879, ackn'ts of Mary M. Mueller, admission that she is accommodation owner of property at southwest corner of Third and Olive streets for George C. Mueller and Thomas Wright; and agreement to reconvey; paid $1;" says he does not know who wrote the instrument; does not recollect of reading it; but would not have taken the acknowledgment without satisfying himself of the contents.

Mr. Green, the attorney before mentioned, testified that he prepared the deed to Wright and Mary Mueller, of date October 6, 1879; that he did not at that time prepare a deed or paper from Mary Mueller to her brother. Speaking of what transpired at his office after the death of Mr. Mueller he says: "I got a paper from her, Mary Mueller; it was burned by her at my office; she said Drosten had threatened to sue her, and to bring up the old difficulties between her brother and his wife, and she did not want to go into court;" that he told her he could probably sell the property, and she gave authority to sell for $9,000, but he sold it for $9,500. On cross-examination by defendants he identified the before-mentioned envelope as the one he saw at his office when Mary Mueller called to see him, and testified, that the paper which she destroyed came out of that envelope;

that he prepared the paper, but did so after January 2, 1880, that he knew what it contained from having prepared it.   In answer to this question by the court: "Were the contents of the paper such as are declared in this bill?" he said, "No, sir." Says he did not notice that it had been signed by anyone, but knows the names of the two Muellers, and the two Wrights appeared in it; that he did not read it at that time, but could say what the contents were from having written it.   He was not asked to state its contents by either side. Says he spoke to Thomas Wright about selling property; that Wright saw Mrs. Hafner on Sunday, and on Monday the trade was closed; that he told Wright Mary Mueller had a perfect title.

The foregoing evidence shows beyond all doubt that Mary Mueller did execute and deliver to her brother a written declaration of trust.   While the evidence of Mr. Green is, that he prepared the paper after second of January, 1880, it is very clear that it was prepared and executed on the sixth of October, 1879, at the date of the deed to Wright and Mary Mueller.   This is the date given by the notary public and disclosed by the memorandum then made by him.   The real question of fact is, what were the terms of the written declaration?

There can be no doubt but the attorney consulted by Mary Mueller knew what the contents of the instrument were.   He was not interrogated on that subject further than to say, in an answer to a question propounded by the court, that the terms were not such as were set out in the petition.   The evidence leads us to the conclusion that he advised the destruction of the paper, and that being so we are not surprised that his evidence was deemed of no value to either side.

According to the evidence of Mary Mueller the declaration of trust provided, that if she died before her brother then the property was to go to him; but, if he died first, then it belonged to her.   This evidence is strengthened and supported by many undisputed facts

in the case.   It is perfectly clear that Mr. Mueller paid the one-half of the purchase price, and had the deed made to his sister.   No reason is assigned in any of the evidence why this was done, save that of a desire to make a provision for his aged sister in the event she should outlive him.   She was his only unmarried sister and depended upon him, and he entertained for her the kindest of feelings.   He had abundant means to make this provision for her without discommoding his wife and child.   It is true he collected the rents during his life and made no account to her for them, but all this is perfectly  consistent  with  the  proposition  that  he intended she should have the property after his death.

Again, it seems clear that he advised her on his deathbed to destroy the paper which she had signed, and gave the same instructions to her on the slip of paper found in the envelope with the declaration of trust.   The title stood in her name, and the destruction of that instrument would leave her the apparent owner, and he doubtless supposed that was a proper way to dispose of the matter.   The foregoing circumstances are entitled to great weight, and go to show that he intended she should have the property in the event she outlived him.

Several arguments are offered in opposition to what has been said, and the first is drawn from the provisions of the will.   The will bears date in 1872 and by it Mueller gave to each of his three sisters $2,000.   The codicil made in 1878 increases these legacies to $4,000 each.   Two of the sisters were married at that date and well provided for, and it is perfectly natural and reasonable that he should make other and additional provisions for this unmarried sister depending upon him for support.

Much reliance is placed on the memorandum made by the notary who took her acknowledgment, but it amounts to but little more than to show the true date of the acknowledgment, namely, the sixth of October, 1879.

It is certainly wrong in so far as it indicates that she held the title for Wright; and this shows that the notary did not understand the contents of the instrument. It no doubt disclosed by its recitals the fact that the title stood in Wright and Mary Mueller, but there can be no claim that she held the title for Wright. The expression that she was the "accommodation owner" of the property is not at all in conflict with the fact that she was to be the absolute owner in case Mueller died first. The memorandum and the evidence of the notary do not in the least dispute the evidence of Mary Mueller as to the contents of the instrument, but rather corroborate her evidence in that respect.

There is no doubt but that Mary Mueller stated what was not true, when she testified that she did not destroy the paper which she signed at the request of her brother. It is clear she did destroy that instrument, and that the sale to Mrs. Hafner was a hasty affair. But these circumstances are weakened by the fact that Drosten had threatened to sue her. He made that threat when he gave her the envelope. They are weakened also by the further fact that her brother told her on his deathbed to destroy the paper. She is a woman unacquainted with business affairs, and this fact must receive due consideration. The destruction of the document is the circumstance that is entitled to most weight against her version of the contents of that instrument.

The spoliation of papers raises a presumption against the party destroying or mutilating them. "His conduct is attributable to his supposed knowledge that the truth would have operated against him." But the presumption is one of fact and not of law, and may be overcome by other evidence. 1 Greenleaf Ev., secs. 31, 37; Whart. on Ev., sec. 1264. The presumption arising from the spoliation of documents must be applied with judgment and sound discretion. The evidence shows that this woman did show the declaration of trust to the

witness Runder, and we see no intention on her part to commit a fraud on anyone. Her conduct in destroying the paper can be attributed to what we conceive to be, to say the least of it, unfortunate advice.

The tendency of the rulings of this court has been in chancery cases to give weight to the finding of the trial court where that court had the parties and witnesses before it; and that deference will, in doubtful cases, turn the scale; but, where we are satisfied the trial court has erred in its findings of facts in chancery cases, it is our duty to act upon our finding as to the facts. We have examined the entire evidence in the case with care, as set out in the transcript, and we can come to no other conclusion than this, that the declaration signed and acknowledged by Mary Mueller provided that in case her brother died first she was to be the absolute owner of the property. With this result the question of notice to Mrs. Hafner is out of the case.

The judgment is reversed and the bill dismissed. BARCLAY, J., not sitting; the other judges concur.