STILLWELL, *Administrator*, v. PATTON, *Administrator, Appellant.*

DIVISION ONE.

1. **Evidence**: DECEASED HUSBAND : WIDOW AS WITNESS. A widow is competent in a suit on a note against her husband's estate to testify to the genuineness of his signature from information of his handwriting which she obtained before marriage.

Stillwell v. Patton.

2.  ——: ——: ——. On redirect examination such witness reiterated that her husband signed the note and added: "Here is one just like it (producing a note). I have more in my possession." *Held*, there was no error in refusing to strike out this testimony.

3.  ——: WRITTEN INSTRUMENT: ALTERATIONS: PRESUMPTION. Although there are alterations apparent upon the face of an instrument, yet, unless there is something suspicious about them, it will be presumed that they were made contemporaneously with the execution of the instrument.

4.  ——: ——: ——. When an alteration appears to be suspicious, as if in a different ink or handwriting, it must be explained by the party producing and relying upon the instrument.

5.  ——: ——: ——. Whether there is anything suspicious on the face of the instrument is in the first instance a preliminary question for the court to determine by inspection.

6.  ——: ——: ——: HARMLESS ERROR. Where the erasures or changes are apparent on the face of the note, and no offer was made to show that they were made after execution, it was not reversible error to refuse to allow defendant's witness, a banker, who testified that in his opinion the alleged maker did not sign the note, to answer questions as to whether it contained changes and alterations, and whether the amount was changed.

7.  ——: WITNESS' INTEREST: DISCRETION OF TRIAL COURT. The extent to which a witness may be examined touching his interest in the suit rests in the discretion of the trial court.

8.  Instruction: HARMLESS ERROR. The omission of the trial court in an action on a note by the indorsee to require the jury to find the fact of such indorsement in case of a verdict for the plaintiff will not constitute reversible error, where such indorsement is really not controverted.

*Appeal from Pike Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*Harrison & Mahan* for appellant.

(1) The court committed error in allowing the wife of William Hubbard to testify against the objection of appellant as shown by the abstract, pages 10, 11,

12.   This not one of the specified cases in which a wife may testify as laid down in section 4014, Revised Statutes, 1879, and that statute being in derogation of common law is to be strictly construed.   *Holman v. Bachus*, 73 Mo. 49; *Brismade v. Groll*, 14 Mo. App. 444; *Willis v. Gammill*, 67 Mo. 730; *Moore v. Moore*, 51 Mo. 118; *Moore v. Wingate*, 53 Mo. 408; *Stein v. Weidman*, *Adm'r*, 20 Mo. 17; *Scroggin v. Holland*, 16 Mo. 419; 1 Greenl. Ev., secs. 336, 337.   (2)   After death of the husband, the widow can only testify to facts coming to her knowledge from other sources, and not by virtue of her marital relations or situation as a wife, when she is a witness in behalf of the estate of her deceased husband.   The court committed error in allowing the widow of William Hubbard to testify against the interest and estate of her deceased husband.   *Cannon v. Moore*, 17 Mo. App. 100; *Sherwood v. Hill*, 25 Mo. 391; *Coffin v. Jones*, 13 Pick. 443; *Scroggin v. Holland*, 16 Mo. 419; *Funk v. Dillon*, 21 Mo. 295; *Hoffman v. Parry*, 23 Mo. App. 30; *Spradling v. Conway*, 51 Mo. 54; *Wheeler v. Wilson Co.*, 75 Mo. 458.   (3)   The note is suspicious; alterations and erasures are apparent on its face.   Amos J. Stillwell held it as an indorsee.   The law presumes the alterations to have been made after indorsement and delivery to Stillwell.   It devolved upon the party holding and offering the note to show its condition.   At least to show it had been altered before they received it.   This the plaintiff did not do, and the court committed error in permitting the note to be read to the jury against appellant's objection. Tiedeman on Commercial Paper, sec. 393, p. 664; 2 Daniels on Neg. Inst., sec. 1417, p. 429; *Smith v. Ferry*, 69 Mo. 142; 1 Greenl. on Ev., sec. 564, p. 603; *Simpson v. Stackhouse*, 9 Barr. 186; *White v. Haas*, 32 Ala. 430; *Fontaine v. Gunter*, 31 Ala. 258; *Wilde v. Armsby*, 6 Cush. 314; *Runnion v. Crane*, 4 Blackf. 466; *Kennedy v. Bank*, 18 Pa. St. 347; *Heffner v. Wenrick*, 32 Pa. St. 423; *Wheat v. Arnold*, 36 Ga. 430; *Willet v. Shepard*,

34 Mich. 106; *Chism v. Towner*, 27 Ark. 109; *Elbert v. McClelland*, 8 Bush, 577; *Hill v. Barnes*, 11 N. H. 395. (4) The time when, and the person by whom, and the intent with which, the alteration was made are matters of fact to be found by the jury under the evidence. The court, having refused to require the holder to explain the note, committed manifest error in excluding appellant's evidence offered to prove the suspicious and spurious condition of the note. *Holton v. Kemp*, 81 Mo. 666; *Paramore v. Lindsey*, 63 Mo. 63; *Lubbering v. Kohllecher*, 22 Mo. 596; *Mathews v. Coalter*, 9 Mo. 71; *Bank v. Murdock*, 62 Mo. 76; 1 Thompson on Trials, sec. 1399; 1 Greenl. Ev., sec. 564. (5) Appellant had the right to show that the heirs of the Hubbard estate who were testifying for respondent had conveyed to Amos J. Stillwell a part of their interest in the estate, and were, therefore, interested in the result. It directly affected their credibility. The court committed error in sustaining an objection to appellant's question in that behalf. *Waddingham v. Hughlett*, 92 Mo. 534; *Muller v. Hospital Ass'n*, 73 Mo. 243.

*J. L. Robards* for respondent.

(1) The widow (Mrs. Elizabeth Hubbard) of William Hubbard, deceased, was a competent witness, and her testimony admissible; the objections made by defendant were properly overruled. Under the common-law rule, the widow is "competent to prove facts coming to her knowledge from other sources, and not by virtue of her marital relation, or situation as wife, notwithstanding they related to the transaction of her husband." 1 Greenl. Ev., sec. 338. "This rule is not abrogated by any statute." *Cannon v. Moore*, 17 Mo. App. 92. (2) The widow did not testify to anything that transpired during coverture with William Hubbard; the seal placed by the law upon the privacy of their joint wedded life was unbroken. The widow was the wife of another man, and William Hubbard, was

the husband of another woman when she acquired the knowledge of his signature. Against such testimony there is no law. The widow was like any other witness, her testimony did not affect the conjugal state. She was a proper and competent witness. *Scroggin v. Holland*, 16 Mo. 419; *Steinman v. Weidman's Adm'r*, 20 Mo. 17; *Sherwood's Adm'r v. Hill*, 25 Mo. 391; 1 Greenl. Ev., secs. 244, 245, 338. (3) The court did right in permitting the note, after proof of its due execution, and after inspection, to be read to the jury. *First.* William Hubbard had admitted to his daughter, Mrs. Bridewell, and to Charles L. Hixon, that he had signed it. *Second.* 2 Parson's Notes & Bills [1 Ed.] p. 477. The proof from other witnesses was overwhelming, and authorized its submission on this issue. *Fornnoy v. Warden*, 17 Mo. 435; *Merrick v. Phillips*, 58 Mo. 436. The court had the right after scrutiny and inspection to determine whether the note was suspicious upon its face, or that alterations and erasures were apparent so as to require explanation of the plaintiff, and the court did determine after careful examination that the note was neither suspicious nor evidenced alteration or erasure. *Butterworth v. Ratcliff*, 7 Mo. 550; *Paramore v. Lindsey*, 63 Mo. 63; *Holton v. Kemp*, 81 Mo. 661; 1 Greenl. Ev., sec. 564.

BLACK, J.—In May, 1886, Richard Stillwell, as administrator of the estate of Amos Stillwell, presented to the probate court of Marion county the following note, for allowance against the estate of William Hubbard:

"$3,944.        HANNIBAL, Mo., December 8, 1881.

"Three years after date I promise to pay to the order of Mary Adeline Hubbard the sum of $3,944, for value received, negotiable and payable without defalcation or discount, and with interest from date at the rate of ten per cent. per annum.        WILLIAM HUBBARD."

The note had been indorsed by Mary Adeline Hubbard, the payee, and her husband, George Hubbard, and delivered to Amos Stillwell as security for a note amounting to $1,200, held by Stillwell against George Hubbard. At the time the note was presented for allowance, there was a credit indorsed thereon, under date of November 10, 1882, for four notes, two for $200 each, and two for $250 each.

The defenses interposed are that William Hubbard did not sign the note, that it is a forgery ; and that the note is worthless in the hands of Stillwell because of material alterations. There was one trial in the probate court and two in the circuit court, all resulting in verdicts for plaintiff.

From the evidence it appears George Hubbard, the husband of the payee of the note, was a son of William Hubbard, the alleged maker. The father and son had some dealings which it is claimed led to the execution of this note, but the nature and extent of these dealings are not disclosed by the evidence as it is recited in the abstracts. Nor does it appear at what date the note was assigned and delivered to Stillwell. William Hubbard saw the note while it was in the hands of Stillwell, and there is much evidence to the effect that he said he signed it, and again that he did not sign it. To some persons he said he did not deny the signature, but if he signed the note the fact had slipped his memory, and that he did not owe George the amount specified in it. The controversy resulted in a criminal prosecution against George, or at least an investigation by the grand jury. There was much evidence on both sides as to whether William Hubbard signed the note, and that particular issue was submitted to the jury on instructions about which there is and can be no complaint. The complaints are that the court erred in admitting evidence produced by the plaintiff, in excluding evidence offered by defendant, and in giving and refusing instructions on the subject of material alteration.

1. The note, it will be seen, bears date December 8, 1881. William Hubbard married his second wife in 1883, and died in 1884. This second wife was the widow of Hubner. She was called as a witness by the plaintiff and testified that she and Hubner, her first husband, had business transactions with William Hubbard, and in this way she saw Hubbard sign papers and became acquainted with his signature before she married him. Being shown the note in question she said the signature of William Hubbard thereto was genuine. To all this evidence defendant objected, because she could not testify against the interest of her husband's estate, and because incompetent by reason of her marriage with Hubbard, which objections were overruled.

At common law husband and wife could not testify for or against each other, save in a few excepted cases. This principle of exclusion was founded partly on identity of interest in the event of the suit and partly on grounds of public policy. By our statute interest in the suit or subject of the litigation is no longer a disqualification. The statute specifies cases in which a married woman may testify in a proceeding prosecuted by or against her husband, but concludes with the provision, that she may not, while the marriage relation exists or thereafter, testify to admissions or conversations of her husband made to her or third parties. The object of this provision was to preserve the common-law rule as to admissions and conversations of the husband. It was not designed to go further in the way of exclusion than did the common law. Speaking of this matter Greenleaf says the rule is analogous to that which excludes confidential communications made by a client to his attorney. "Accordingly, the wife, after the death of the husband, has been held competent to prove the facts coming to her *knowledge from other sources* and not by means of her situation as a wife, notwithstanding they related to the transactions of her husband." 1 Greenl. Ev., sec. 338.

The widow, it was held in *Scroggins v. Holland*, 16 Mo. 419, is a competent witness to testify in the interest of her deceased husband's estate; and in *Stein v. Weidman's Adm'r*, 20 Mo. 18, it was said: "In the opinion of this court the widow of a decedent may be a witness for or against the administrator or executor of the estate of her deceased husband, whether solvent or insolvent, as to all such facts as the policy of the law does not require to be kept sacred and secret between husband and wife during marriage." See, also, *Sherwood's Adm'r v. Hill*, 25 Mo. 391; *Spradling v. Conway*, 51 Mo. 51; *Moore v. Moore*, 51 Mo. 118. Here the witness did not undertake to relate or speak of admissions of or conversations with her husband. Besides this she testified as to the handwriting of her husband from information which she received before the marriage. As she did not undertake to disclose admissions of her husband, or communications made by him to her or to third persons, her evidence was properly received, under the authorities before cited.

On redirect examination she again gave it as her opinion that her husband signed the note, and then said : " Here is one, just like it ( producing a note); I have more in my possession." The defendant then moved to strike out the quoted words of the witness, but the court overruled the motion. The question here presented is wholly unlike that decided in *Rose v. Bank*, 91 Mo. 399. Here the papers spoken of by the witness were not introduced into the case for the purpose of making a standard of comparison. Indeed, they were not produced in evidence at all. She had been examined and cross-examined as to her knowledge of the handwriting of Hubbard, and her reference to these papers amounted to nothing more than a further statement as to the means by which she acquired the information to enable her to testify. The objection is without any merit whatever, and the court did not err in overruling the motion to strike out the evidence.

2.   The trial court, it is next insisted, erred in allowing the note to be read in evidence without evidence explaining the erasures and interlineations. It does not follow from the simple fact that there are erasures, or interlineations on the face of a note that the party suing on it must show that they were made at or before its execution.

Though · there are alterations apparent upon the face of the instrument, yet unless there is something suspicious about them it will be presumed that they were made contemporaneous with the execution of the instrument.   When an alteration appears suspicious, as if in a different ink or handwriting, then it must be explained by the party producing and relying upon the instrument.   Whether there is anything suspicious on the face of the instrument is, in the first instance, a preliminary question for the court to determine by inspection.   These principles of law were asserted in clear terms in *Paramore v. Lindsey*, 63 Mo. 63, citing the prior case in this court.   That there are authorities which assert a different rule in respect of negotiable paper must be conceded ; but we see no reason for departing from the law as laid down in that case.   The reason of the rule as there asserted is that the law will presume honesty until there is something to indicate a contrary purpose.   The mere fact of an erasure or interlineation does not ordinarily indicate any dishonest intention.

The note in question, the original of which is before us, is on very light and poor quality of paper, partly printed and partly written.   The figures 3944 in the upper left hand corner are in writing.   The figure three is blurred, but the other figures are clear and show no indication of having been written over an erasure.   The abbreviations, " Mo. Dec.," in the date were doubtless written over an erasure.   The words in the body of the note stating the amount are in writing.   The words, "and forty," are evidently written over an erasure, and are very much

blurred. The signature looks as if a newspaper had been used as a blotter. When we come to look at this instrument as a whole it seems to us there is little or nothing of a suspicious character about it. The amount of the note, as has been indicated, is stated in figures in the upper margin and again in written words in the body. Though the figure three appears to have been written over an erasure the corresponding word "three" in the body is free from any such indication; and though the words "and forty" in the body of the note were evidently written over an erasure the corresponding figure four in the margin is free and clear, So far as concerns the amount, the paper carries on its face a sufficient explanation of the blurred condition of some of the figures and letters. In view of those considerations and the fact that the written portion of the note, save the signature, is all in the same ink and handwriting, and the paper so poor as to allow the ink to spread, we think there is nothing suspicious about the note to the ordinary eye. It did not, therefore, devolve upon the plaintiff to produce explanatory evidence before introducing the note in evidence.

3. The more difficult question on this branch of the case arises from the action of the court in refusing to permit the defendant's witness, Garth, to answer certain questions. This witness was a banker, and testified that in his opinion William Hubbard did not sign the note. He also stated that it became necessary for him in his business to examine notes as to alterations, erasures and changes. He was then asked these questions: "Examine the face of the note, and state to the jury the condition of the note as you find it, as to erasures and alterations, changes of date and amount. Examine the date and see if it has been changed, and the body of the note, and see if it has been altered and the amount changed." Plaintiff objected to these and some other like questions on the ground that the jurors could examine the note for themselves, and the objections were sustained.

This witness should have been allowed to answer these questions; but we think the error is not such as to demand a reversal. That some words and figures constituting a part of the date and amount were written over erasures is clear enough to anyone, so that the only question on this branch of the case was as to when the erasures were made, whether before or after the execution and delivery of the note. No witness in the case gives any evidence showing, or tending to show, that there had been any alteration in the note in any respect after its execution. Indeed, there was no effort to examine any witness upon this subject, lest it be by these excluded questions.

We cannot see that this proposed examination was designed to put the jury in the possession of any fact which they did not have, and which would aid them in reaching a conclusion as to when the erasures were made. As the erasures were obvious and examined by the jury, and the proposed examination was not designed to disclose any other fact, we can say the defendant was not in the least prejudiced by the exclusion of the proposed evidence. It is perfectly clear that defendant proposed, and proposed only, to show erasures and then leave it to the jury to say when they were made, for no additional evidence was offered.

4. Frank and Sylvester Hubbard and Mrs. Bridewell, daughter and sons of William Hubbard, gave evidence tending to show that their father signed the note. The defendant then called John P. Hubbard, another son of William Hubbard, and proved that some of the children, including those who had testified in behalf of the plaintiff, had settled with Amos Stillwell by conveying to him their interest in a house and lot belonging to the estate, Stillwell agreeing with them that, if he obtained judgment on the note, he would make the money out of that property, and not resort to other property of the estate. On redirect examination the defendant asked the witness to state the value of

the property which was conveyed to Stillwell, but the court sustained the plaintiff's objection thereto.

The only purpose of this examination was to show what interest the witnesses had in the suit. This and other witnesses had been examined and cross-examined as to the settlement, by whom made and what property it embraced. The extent to which such an examination may be carried must be left to the sound discretion of the court. The court had already heard much evidence as to the settlement and the terms thereof, and there was no error in refusing to hear further evidence on that subject.

5. By 'the instructions given, the court told the jury that, if the note had been changed as to date or amount after it was executed and delivered, then they should find for defendant. The defendant, however, objects to another instruction given at the request of the plaintiff, which told the jury that, if there was any such change, the presumption was that it was made prior to or at the time the note was signed and delivered, and that it devolved upon the defendant to show that the change was made after the execution and delivery.

As we hold there was nothing on the face of the note calling for explanatory evidence from the plaintiff, this instruction presents the law correctly. In giving it the court followed the law as it is laid down in *Paramore v. Lindsey, supra*. To say this instruction is bad is to overrule that case, and this we decline to do.

6. The second instruction given at the request of plaintiff is in these words: "2. The court instructs the jury that, if they believe William Hubbard signed the note in suit, then the verdict will be for the plaintiff for the amount of said note and interest, less the credits thereon, unless the jury further find from the evidence in the cause, that the said note has been altered since the signing and delivery thereof."

The objection to this instruction is that it does not require the jury to find that the payee indorsed or

Hamilton v. The Rich Hill Mining Co.

assigned the note to Stillwell. It does not require the jury to find that fact, and would be erroneous had such an issue been made in the case. The pleadings on the part of defendant were oral, and we can only tell what the real issues were by an examination of the evidence. There is an abundance of evidence that the payee of the note and her husband indorsed and delivered the same to Stillwell. This is shown by the evidence produced on both sides, and the fact is controverted by no one. It passed as a conceded fact in the case, and, hence, no instructions were asked on this subject by either party. The question is evidently made for the first time in this court. As the assignment was duly proved and not questioned on the trial, the omission in the instruction does not constitute reversible error.

The judgment is affirmed. All concur.