JACOB F. KIRCHER, Administrator of Estate of H. M. DUNNINGTON, v. F. M. DUNNINGTON and BERTHA E. DUNNINGTON, Appellants. —29 S. W. (2d) 138.

Division One, June 3, 1930.

*J. A. Silvers* and *Guy E. Silvers* for appellants.

*T. N. Haynes* for respondent.

SEDDON, C.—This is an action upon three promissory notes, alleged to have been made and executed by the defendants, who are husband and wife. Plaintiff is the administrator of the estate of H. M. Dunnington, deceased, who was the payee named in the instruments sued upon. Defendants are the son and the daughter-in-law of the deceased payee, H. M. Dunnington, who was the mother of F. M. Dunnington. The action was tried in the circuit court without the aid of a jury, resulting in a judgment in favor of the plaintiff administrator, and against the defendants, in the sum of $1181. The defendants were allowed an appeal to the Kansas City Court of Appeals, which court rendered an opinion and decision reversing the judgment of the circuit court, but the judges of the Kansas City Court of Appeals, deeming their decision to be contrary to certain previous decisions of the St. Louis Court of Appeals, have certified and transferred the cause to this court, pursuant to Section 6, Amendment of 1884 to Article VI, of the Missouri Constitution. Under said section

of the Constitution, this court takes jurisdiction of the cause · as though the cause were here by ordinary appellate process.

The petition is in three counts, and is conventional in form. The first count alleges that the defendants, on January 1, 1913, made, executed and delivered to H. M. Dunnington their certain promissory note, payable five years after date, whereby, for value received, they promised to pay to the order of said H. M. Dunnington the principal sum of $900, with interest from date at the rate of five per cent per annum; and alleges that defendants had paid $400 on said note on December 25, 1914. The second count declares upon a note for the principal sum of $106, dated November 30, 1917, payable three years after date, with interest from date at the rate of five per cent per annum. The third count declares upon a note for the principal sum of $75, dated November 30, 1917, payable three years after date, with interest from date at the rate of five per cent per annum.

The defendants filed a verified answer, upon their oaths, wherein defendants "deny that they executed the paper writings sued on in this case, and set forth and mentioned in the three counts of said petition, and in each of said counts." The verified answer further avers: "That neither of the alleged promissory notes sued upon in plaintiff's petition is the promissory note of these defendants, or either of them; these defendants say that their respective signatures, as they appear upon the instruments of writing set forth and mentioned in each of the three counts of plaintiff's petition, are in fact the genuine signatures of these defendants placed upon said writings by them, respectively, and by their own proper hands, but that since the signing of said papers by these defendants, said writings have been so altered and changed as to entirely change the contracts made, and the obligations entered into by defendants at the time of the execution of the writings; that said alterations are material, in that they change the rate of interest to be charged these defendants; that when said papers were signed, they, and each of them, were so written as to bear no interest, whereas they now appear to bear five per cent interest; that said change and alteration was made without the knowledge or consent of defendants, or either of them, nor was it made by anyone by or with authority from these defendants, or either of them, so to do; by reason of which, these defendants, and each of them, on oath deny the execution of said promissory notes sued on in each count of plaintiff's said petition, and ask to be discharged herein with their costs."

No reply was filed by the plaintiff.

Upon the trial of the action, plaintiff offered in evidence the three promissory notes declared upon in the petition, with the endorsements thereon. Defendants objected to the introduction of

each and all of the several notes in evidence, upon the ground that it clearly appears upon the face of each of the notes that a material alteration had been made therein, in that each of the notes originally had been written in ink upon a printed form so that each note originally read that the note is payable "with interest from date at the rate of no per cent per annum," and the word "no" had been faintly erased and was still plainly observable, and there had been inserted in each note, at the place of said erasure, the figure "5," written with an indelible pencil, clearly showing that the figure "5" so inserted was written with a purple indelible lead, wholly different in color and in ink from the balance of the written portions of the notes. The trial court overruled the objections of defendants, and admitted the three notes in evidence. Plaintiff offered no further proof of the execution of the notes, and after an admission by the parties of plaintiff's appointment as administrator of the estate of the deceased payee, the plaintiff rested his case.

The evidence adduced by defendants tends to show that H. M. Dunnington, the payee named in said notes, died testate on July 2, 1922. She was survived by her husband, L. W. Dunnington, and by three sons, F. M. Dunnington, A. E. Dunnington and W. E. Dunnington. By her last will and testament, she devised and bequeathed to her husband, L. W. Dunnington, all of her estate, real and personal, for and during his lifetime. Upon the death of her husband, the whole of testatrix's estate, real and personal, was devised and bequeathed to testatrix's three sons (above-named) and a grandson, Leslie C. Dunnington, to be equally divided among the four named beneficiaries. L. W. Dunnington was appointed administrator of his deceased wife's estate by the Probate Court of Cass County. In due time, he filed in the Probate Court of Cass County an inventory of his deceased wife's estate, which inventory listed no promissory notes, or other personal property, whatsoever. The final settlement of L. W. Dunnington, as administrator of the estate of H. M. Dunnington, recites: "Administrator states that he has received no personal property belonging to said estate since his appointment." L. W. Dunnington was discharged as administrator of his deceased wife's estate by the Probate Court of Cass County on November 13, 1923, at which time his final settlement was filed and approved. About one year thereafter, L. W. Dunnington died. The promissory notes now in suit were found among his effects and papers, which deceased had kept in a tin box at a bank in Drexel, Missouri. Upon the finding of the notes among the effects of L. W. Dunnington, deceased, the estate of H. M. Dunnington was reopened by the Probate Court of Cass County on April 18, 1925, and plaintiff, who was then Public Administrator of said county, was duly appointed as administrator of the estate of H.

M. Dunnington, deceased, and was directed to take charge of, and to administer, the same. Pursuant to such order and direction of the Probate Court of Cass County, plaintiff commenced the instant action to recover upon the three notes in controversy. At the same time, another and separate action was commenced by plaintiff administrator against A. E. Dunnington and his wife, Ella, to recover upon their promissory note, dated January 1, 1913, payable five years after date to the order of H. M. Dunnington, for the principal sum of $1550, and purporting to bear interest from date at the rate of five per cent per annum. A like defense was interposed to that action by the defendants, A. E. and Ella Dunnington, resulting in a judgment against said defendants, and an appeal was taken therein to the Kansas City Court of Appeals, where the judgment therein was reversed, and that cause likewise was certified and transferred to this court upon the same ground and for the same reason as in the instant action.

The evidence herein further tends to show that each of the notes in controversy was made out upon a printed form, and that the blank spaces in the printed form of the several notes were filled in with pen and ink. The handwriting in the body of the notes was identified on the trial as the handwriting of L. W. Dunnington, the husband of the payee named therein, and the father of F. M. Dunnington and A. E. Dunnington. When the several notes were found among the deceased father's effects, the word "no," which originally had been written in the blank space provided in the printed form for inserting the rate or amount of interest, had been faintly scratched or rubbed out, so that the erasure was clearly visible on the face of each of the notes, and the numeral or figure "5" had been inserted with a purple indelible pencil. The signatures of the makers of the several notes were written in ink, the color of which was that of the ink with which the blank spaces of the notes originally had been filled in. There is no clear or positive evidence, amounting even to a scintilla of evidence, as to when the erasures of the word "no" and the insertions of the figure "5" were made in the several notes, or by whom such alterations were made. A credit of $400 is endorsed on the back of the $900 note in suit, as follows: "Received upon the within note $400, this December 25, 1914. Balance due $500." At the purported time of the endorsement of such credit, interest for nearly two years was due upon such note, according to its tenor, if the alteration had been made prior to the date of the endorsement of the credit of $400 upon the principal of the note. No interest payments are credited or endorsed upon any of the notes in controversy. The defendants were not allowed to testify respecting the alterations, they being incompetent as witnesses under the statute of this State, for the reason that the payee named in the notes had died prior to the commencement of the action.

In rebuttal, plaintiff adduced the testimony of W. E. Dunnington, a brother of defendant F. M. Dunnington, to the effect that, on several occasions and at various times, the three sons and their wives, in the presence of their mother, H. M. Dunnington, had discussed the matter of payment of interest upon loans which the mother had, from time to time, made to the respective sons; that it was suggested by one or more of the three sons that interest should be paid on the indebtedness to their mother; but that the expression of such thought "just dropped out and was just a mere suggestion," and apparently was not acted upon by any of the sons, or acquiesced in by the mother. The plaintiff's witness, W. E. Dunnington, testified further that he had never seen the notes in controversy until after the death of his father, when they were found among the deceased father's effects in the bank at Drexel. He was unable to say who wrote the figure "5" in the several notes, or when the erasures and alterations were made in the several notes.

The foregoing is the substance of the entire evidence bearing upon the issues of the execution of the notes, and of their alteration.

At the close of all the evidence, defendants requested the court to give a declaration of law to the effect that, under the law and the evidence, the judgment and finding must be for defendants. Upon the refusal of such declaration by the court, the defendants requested the court to give the following declaration of law:

"If the court finds, from an inspection of the notes sued on, that the alteration complained of by defendants can be determined from an inspection of the note(s) offered in evidence by the plaintiff; that the figure '5' inserted in the space left in the printed form for the expression of the rate of interest was written with a pencil over an erasure of the word 'no' that had been written in ink; that the remainder of the blank spaces on the printed form of note used was written in ink; and that the signatures written thereon were written in ink of apparently the same kind as that appearing in the body of the note; then, such alteration is suspicious and the integrity of the note(s) is thereby destroyed, and the burden of proof is upon the plaintiff to show that such alteration was made before the signing of said note(s) or that the same was assented to by the defendants, and unless the plaintiff has so shown the judgment must be for the defendants."

The requested declaration was refused by the trial court, and defendants duly saved their exceptions to the refusal thereof.

Defendants also requested the court to make a written finding of the facts. In compliance with such request, the trial court found the facts to be:

"These notes were originally blanks filled in with ink, and supposed to have been in the handwriting of L. W. Dunnington, the

husband of the payee of the notes. It is apparent that the notes were first written with 'no' in the blank space before interest, and afterward erased, and the figure '5' inserted with pencil. . . . The evidence in the case is very meager, and it is impossible for the court to tell by mere inspection of the notes when the changes in the notes were made." Upon the facts as so found, the trial court announced the following conclusion of law: "The defendants, in their answer, allege that these notes were changed after they were executed and delivered to plaintiff (H. M. Dunnington); now, if the defendants had not filed answer, plaintiff would have been entitled to judgment on the pleadings. Unquestionably so. Now what would be the difference in law in *not* filing an answer, and filing an answer and making no proof of what that answer contains. There is not a scintilla of evidence that these notes were changed, after they were given to plaintiff (H. M. Dunnington), as alleged in defendants' answer. So we believe that, after giving these matters due consideration, these notes sued on are the notes of defendants, and executed by them, and that plaintiff should have the right to recover the amount shown to be due on each note."

Judgment was accordingly entered for the plaintiff, and against the defendants, in the sum of $1181, which is the aggregate amount of the principal and interest due upon the notes, according to their tenor, as introduced in evidence on the trial. The defendants assign error in the foregoing acts, rulings, findings and judgment of the trial court.

The theory of the trial court, as is disclosed by the court's refusal of the declarations of law requested by defendants, and as is inferentially and impliedly expressed in the court's conclusion of law, was to the effect that the burden rested upon the defendants to proffer substantial evidence tending to show that the apparent alterations in the notes in suit were made after the execution and delivery of the notes, and that such alterations were made without the acquiesence, assent and authority of the defendants. Upon the record before us, we are of opinion that the theory of the trial court was wrong, and that the court erred in the application of the law of the case. The trial court's theory is not in accord with the uniform rulings of this court upon the subject. [Paramore v. Lindsey, 63 Mo. 63, l. c. 66, 67; Stillwell v. Patton, 108 Mo. 352, l. c. 360; State ex rel. v. Chick, 146 Mo. 645, l. c. 657-659; Kelly v. Thuey, 143 Mo. 422, l. c. 433; Collison v. Norman (Div. I), 191 S. W. 60, l. c. 62, 63; Meffert v. Lawson, 289 Mo. 337, l. c. 361.]

In Meffert v. Lawson, supra, the applicable rule of evidence and procedure is thus tersely stated by WALKER, J., speaking for Division Two of this court:

"The ancient rule of evidence, as stated and discussed by Mr. Greenleaf (1 Gr. Ev., sec. 564), was that alterations and erasures of written instruments were presumed to have been made at or prior to the time of their execution. The trend of authority is still in favor of the rule as thus declared. However, where an alteration or erasure appears suspicious on its face; for example, where a different ink has been employed at the point of erasure from that elsewhere used in the instrument, it demands explanation. In the presence of this, or equally cogent circumstances of a suspicious nature, the law presumes nothing and the question as to the time when, the person by whom, or the interest for which, the alteration was made, are matters of fact to be found by the jury *upon proof adduced by the party offering the instrument in evidence.*" [Italics ours.]

The rule of evidence and procedure which has been adopted and uniformly followed by this court in the cases, supra, is in accord with the prevailing weight of authority in other jurisdictions. [2 C. J. 1275, 1276, and cases there cited.] The cited text states the generally accepted rule to be that, "where the alteration is suspicious in itself, . . . the presumption of alteration before execution will be overcome and the burden will rest upon the party offering the instrument to explain it." As to what particular circumstances are sufficient to raise such a suspicion respecting the alteration of an instrument as to require explanation, the text announces: "Apparent changes, which *inter alia* have been deemed sufficient to raise such a suspicion as to require an explanation, exist where the paper has been cut and a mutilated figure left; where the instrument appears to be contrary to its probable meaning as it stood before the insertion of interlined words; where the erasure or interlineation is obviously beneficial to, as by enlarging the rights of, the party producing and claiming under the instrument; where the ink in which the interlineation or addition is written differs from that of the body of the instrument, and such addition is in a different handwriting from that of the body of the instrument, although there are some cases to the contrary; or where the words written on an erasure are cramped to fit the space." [2 C. J. 1290, 1291.]

The trial court, from an inspection of the notes in suit, found that the blank spaces in the notes were originally filled in with ink, supposedly in the handwriting of the husband of the payee named in the notes, and that "it is apparent that the notes were first written with the word 'no' in the blank space before interest, and afterward erased, and the figure '5' inserted with pencil." Under the rulings of this court as announced in the aforecited cases, and by the great weight of authority, such alteration (which is apparent upon an inspection of the notes, as found by the trial

court) casts suspicion upon the integrity of the notes, and imposes the burden upon the plaintiff, who seeks recovery upon the notes, to explain the alteration, and to show when, and by whom, and by what authority, the alteration was made. As is said by the Springfield Court of Appeals, in Mechanics' American Natl. Bank v. Helmbacher, 199 Mo. App. 173, 177: "The presumption is in favor of the integrity of a negotiable promissory note; but if the note on its face appears to be in different handwriting, written at different times and in different ink, this destroys the presumption of integrity. [Exchange Bank v. Robinson, 185 Mo. App. l. c. 586, and cases there cited.] An analogous principle is approved in Collison v. Norman, 191 S. W. (Mo.) l. c. 62; Carson v. Lumber Co., 192 S. W. (Mo.) l. c. 1021."

The statute of our State (Section 911, R. S. 1919) defines a "material alteration" of a negotiable instrument to be "any alteration which changes . . . the sum payable, either for principal or interest;" and furthermore provides (Section 910, R. S. 1919) that, "where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alterations, and subsequent indorsers." It cannot be gainsaid that the apparent alteration of the notes in suit is a material alteration under the statute. [Mech. Am. Nat. Bank v. Helmbacher, 199 Mo. App. 173.] Aside from the statute, however, this court has held that any unauthorized change or alteration on the face of a written contract or obligation is a "nullifying alteration," unless, of course, the alteration was the act of a mere stranger to the instrument. [Kelly v. Thuey, 143 Mo. 422, 434.]

Moreover, the verified answer of the defendants is a plea of *non est factum*, and specifically denies the execution of the instruments sued on. It is true that the answer admits the signatures of defendants as appearing upon the notes, but, nevertheless, the defendants plead a material alteration of the notes so as to change the contracts and obligations originally entered into by defendants, by reason of which material alteration, defendants deny the execution of the promissory notes sued on. The answer is a good and sufficient plea of *non est factum*, and properly raises the issue of the execution of the instruments sued on. "An answer specifically denying the execution of the instrument sued on is sufficient." [2 C. J. 1261.]

In State ex rel. v. Chick, 146 Mo. 645, 657, 658, which was an action to recover upon the official bond of a county clerk, an alteration of which bond appeared upon its face, this court, en banc, said: "The testimony shows that it was plain to be seen that an erasure had been made in the penalty of the bond. The word 'five' was written over a space from which something had *evidently* been erased. This

was *manifest* from an inspection of the paper. The defense was *non est factum.* The burden was therefore on plaintiff to show that defendants executed the instrument as *sued on;* that the *identical* paper, upon which a recovery was sought against them, was *their* bond. . . . There was never any denial or dispute that the names upon the paper were written by the defendants respectively. The question was, did they execute the bond filed as the foundation of the action? Plaintiff held the affirmative of *that* issue. The position of the parties should not be changed by indulging in presumptions. To say that under the pleadings and under the evidence, as it stood before the jury, it should be presumed that the alteration was made before defendants signed the obligation, would simply shift upon *them*, notwithstanding their plea of *non est factum*, the burden of disproving plaintiff's allegation, that they executed the instrument. . . . Defendants had the right to stand upon the very terms of their contract; to deny that the bond sued on was their bond; and to require that its execution be proved. The *onus* was on plaintiff to do so."

In Burton v. Insurance Co., 88 Mo. App. 392, 399, which was an action to recover upon a fire insurance policy, the St. Louis Court of Appeals said: "The court, from an inspection of form No. 4, attached to the policy and made a part thereof, found that it had been mutilated and a part of it was gone. On this finding the court fell into error in ruling that the presumption is that the severance or mutilation was made at or before the delivery of the policy. . . . The very fact that a part of the form had been clipped or cut off by a sharp instrument was a suspicious circumstance. [Hays v. Bayliss, 82 Mo. 209; State v. Chamberlain, 89 Mo. 129; Sweitzer v. Allen Banking Co., 76 Mo. App. 1; Drosten v. Mueller, 103 Mo. 624.] And the *onus* was on the respondent (plaintiff) to disprove or explain the spoliation. [Stillwell v. Patton, 108 Mo. 352.] By its ruling the court deprived the appellant (defendant) of a defense which it duly pleaded and prima-facie made by the production of the policy, which as the court found had been spoliated."

We conclude that the circuit court erred, in the instant case, in imposing the burden of explaining the apparent alteration in the notes upon the defendants, and that the cause was ruled by the court upon an erroneous theory of law. Under the state of the pleadings herein, the burden was upon the plaintiff, and not upon defendants, to explain the manifest and material alterations appearing upon the face of the promissory notes sued on. Plaintiff offered no direct and positive proof in support of the burden cast upon him by the controlling and applicable principle of law, but merely offered the altered notes in evidence, without explaining, or attempting to explain, the manifest alterations appearing upon their face.

For the reasons herein stated, the judgment of the circuit court is reversed, and the cause is remanded for retrial, in order that plaintiff (if able so to do) may offer substantial and reasonable evidence tending to show that the alterations in the notes were made at or before the execution and delivery of the notes, or by the authority and with the assent of defendants. If, upon a retrial of the action, plaintiff fails to offer substantial proof tending to explain the alterations of the notes, a judgment for plaintiff upon the notes is not sustainable. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.