ADAMS v. YATES *et al.*, *Appellants*.

Division One, April 1, 1898.

Ejectment: EVIDENCE OF TITLE: ERASURE OF GRANTEE'S NAME. Land was assessed to G. A. Yates, but not given in by him. The plaintiff's title was based on a tax deed conveying the interest of G. A. Yates. The record showed the title in H. Yates, his son. Plaintiff claimed that the original had been altered before record by erasing the initials "G. A." before the name of Yates by writing "H." in lieu thereof. One witness testified that G. A. Yates showed him a deed wherein G. A. Yates appeared as grantee, but said he did not see the name of the grantor, did not know whether it was signed or acknowledged, nor what land it described. Another witness said that G. A. Yates claimed to be the owner, that he had furnished the money, but that the title for his accommodation was made to "H. Yates." The evidence showed that words or letters before Yates in the deed, when it was offered for record, had been erased, and "H." written in the erased place, but no witness could testify that the erasure was of the letters "G. A." The evidence showed that the land had been paid for with the personal check of H. Yates, nor was there any evidence that the erasures or alterations were made after the execution of the deed. *Held*, that on these facts plaintiff was not entitled to recover; for there is no presumption of law, even though the burden of proof were shifted to H. Yates to explain the erasure, that the deed was ever made out to G. A. Yates.

*Appeal from Clinton Circuit Court.*—Hon. William S. Herndon, Judge.

Reversed.

*John A. Cross & Sons* for appellants.

(1)   The circuit court manifestly erred in finding for the respondent without any evidence of title in him to the land in suit.   The plaintiff must recover on the strength of his own title, and not on the weakness of defendant's title. *Foster v. Evans*, 51 Mo. 39; *Cape Girardeau v. Renfroe*, 58 Mo. 265; *Duncan v. Elliott*, 99 Mo. 622; *Mather v. Walsh*, 107 Mo. 121; *Wilkerson v. Eilers*, 114 Mo. 245; *West v. Bretelle*, 115 Mo. 653; *Harwood v. Tracy*, 118 Mo. 631; *Ratliff v. Graves*, 132 Mo. 76.   Plaintiff must show a paramount title to recover, and can not rely on the weakness of defendant's title; therefore the question of the validity of the Geo. M. Clark deed to H. Yates is not material to the issue. *Gravel Road v. Renfroe*, 58 Mo. 265; *Foster v. Evans, supra; Large v. Fisher*, 49 Mo. 307; *Knowlton v. Smith*, 36 Mo. 507.   It is not sufficient for plaintiff to show an equitable title; he must show the legal title to be in him. *Hunter v. Selleck*, 118 Mo. 588.   (2)   Any alteration of a written instrument should be presumed to have been made before or at the time of its execution. *Stillwell v. Patton*, 108 Mo. 352; *Franklin v. Baker*, 48 Ohio St. 296; *Collins v. Ball*, 82 Tex. 279.   (3)   The burden of proof is on the party alleging that the alteration was made subsequent to the execution of the instrument. *Hogan v. Ins. Co.*, 81 Iowa, 321; *Woodworth v. Bank*, 10 Am. Dec. 273.   (4) The original deed from Mr. Clark to H. Yates, being lost, or not within the control of appellant, the record thereof was properly admitted in evidence. R. S. 1889, 4874.

*H. T. Herndon* for respondent.

(1) In actions of this kind, where the cause is submitted to the court sitting as a jury, without any findings of law or fact being asked or given, the appellate court will affirm the judgment where there is any substantial evidence to support it. *Hill v. Kingsland*, 33 S. W. Rep. 162, and cases cited. And every presumption is in favor of the finding of the trial court. (2) Ejectment was a proper action to bring in this case. A plaintiff in ejectment is not required to reestablish a lost or destroyed deed by bill in equity before bringing an action for possession. *Donaldson v. Williams*, 50 Mo. 407.

ROBINSON J.—This is an action of ejectment in the usual form for forty acres of land in Clinton county against G. A. and H. Yates. H. Yates files for his answer a general denial and G. A. Yates made no appearance. The case was tried by the court and judgment given for plaintiff and against defefendants for the possession of the land and for one cent damages, from which defendant H. Yates alone prosecutes this appeal. The plaintiff to sustain the issue on his part offered in evidence a sheriff's deed to the land in controversy dated January 13, 1894, based upon an execution issued against the defendant G. A. Yates, rendered in January, 1893, and in favor of himself, and attempted then to show by parol that a deed had been made to said land by one George M. Clark of date September 4, 1891, to the defendant G. A. Yates. Both plaintiff and the defendant H. Yates claim under the said George M. Clark, the controversy being whether the deed made by Clark was as originally made, or whether it had not been altered subsequent to its delivery (a certified record copy of which, containing the name of

H. Yates as grantee, having been read in evidence). Plaintiff claimed that the deed as originally made was to G. A. Yates and subsequently altered after delivery to him by erasing the initials "G. A" before the name "Yates" and inserting in lieu thereof the letter "H" so as to show title in H. Yates and thereby defraud him, a creditor of G. A. Yates.

The assessor of the county, testifying for plaintiff, says that the land in suit had been twice assessed as the property of G. A. Yates, but at neither time was given in by either G. A. or H. Yates. One D. D. Frost, the son-in-law of G. A. Yates, testified to the effect that G. A. Yates had at one time told him that he owned the land and at that conversation showed him a deed wherein the name of G. A. Yates appeared as grantee, but he says that he never saw the name of the grantor in the deed and does not know that the deed that he saw was acknowledged or signed and when asked "what was the description of the land in the deed," answered "I don't know anything about the description." Next Mrs. Frost, daughter of G. A. Yates was called to testify for plaintiff, and as her testimony seems to have been considered of much importance, and as she alone of all the witnesses undertook to give an adverse declaration by the defendant H. Yates against his ownership of the land, I will copy here her exact language to the question propounded to her:

DIRECT EXAMINATION BY MR. HERNDON.

"*Q.* What relation, if any, are you to H. Yates? *A.* He is a half brother of mine.

"*Q.* G. A. Yates is your father is he not? *A.* Yes, sir.

"*Q.* Do you remember the time a piece of land was bought there? *A.* Yes, sir.

"*Q.* West of H. Yates's house? *A.* Yes, sir; I was in Lathrop a few days after it was bought, and my brother was telling me about the land.

"*Q.* H.? *A.* Yes, sir. Well, father and I went up to spend the night and he was telling me about the land.

"*Q.* What did he tell? *A.* Said my brother bought it, gave $425; said when he come here he had nine hundred dollars and my brother had three hundred, and he said, 'I gave it to H. to put in the bank in my name, so I would not be bothered;' he said he bought the land, but it is deeded to H. and he said, 'no woman will get a finger in it;' and two years ago father told me the deed was not recorded in '92; he said he had not had my deed recorded yet.

"*Q.* Was G. A. Yates present? *A.* Well, the last time we was there, stayed all night; my brother was at home, he was not there.

"*Q.* Did you ever have any conversation with Hezekiah about it? *A.* Well, I heard him speaking of it as father's forty and his forty. It was my understanding by the talk it was father's land.

CROSS-EXAMINATION BY MR. CROSS.

"*Q.* You say he told you he had three hundred dollars and the land was deeded to Hezekiah? *A.* Father told me my brother had three hundred dollars when they got back here, and father had nine hundred and he said: 'I gave it to H. to put in the bank, so he could check it out and I would not be bothered with it;' and at the time darkies were clearing the land, father said: 'I did not want to be troubled with those darkies clearing the land, I left H. to see to that.'

"*Q.* He attended to it at the time and is attending to it yet? *A.* It seems he is, he attended to a good deal of father's business."

Next the assessment list of H. Yates for the year 1893 was read in evidence. Also the list of G. A. Yates. In the list of H. Yates the land in controversy does not appear, but does on the list of G. A Yates. Objection was made to the reading of the assessment lists as well as to the declaration made by G. A. Yates of his ownership of the land, both of which were overruled, and excepted to on part of defendant H. Yates. The deputy recorder of the county then testified that he noticed the deed from Clark to H. Yates when it was in his office for record, and could see clearly that the original name of the grantee as written in the deed had been changed. The alteration consisted of an erasure, made by a knife or some sharp instrument, of the initial or given name before the word "Yates" and the re-writing over the same, and in the place thereof the letter "H." To the same effect was the testimony of Mr. Riley one of plaintiff's attorneys, who also examined the deed when it was in the recorder's office for filing, with the additional statement on his part that he noticed a similar erasure and change had been made on the back of the deed where the name of the grantee was written. Neither Mr. Riley nor the deputy recorder could say what was the word or initial that had been erased and over which the letter "H" had been written, neither could they say when the erasure had been made, or who made it, or for what purpose it was made.

All the testimony showed that the land was paid for with the personal check of H. Yates; that he went into possession of the land a short time before the deed to it was delivered and has continued to hold and exercise control over same ever since, and has made improvements thereon by clearing off the timber and

reducing it to a state of cultivation, and has at all times either used or sold the crops raised from it and has paid all the taxes due upon it, although it was twice assessed in the name of G. A. Yates.

From any point of view that this case may be considered, there is a total want of proof to show title in the plaintiff, or that it was ever in his execution debtor G. A. Yates. While there were some facts shown that may be said to be suspicious, and that if connected with other facts, not shown however, might have been strongly corroborative of plaintiff's contention, yet in and of themselves considered separately or collectively, they fall short of establishing the existence of a condition necessary for plaintiff's recovery.

If this court should reverse the ruling made in the early case of *Matthews v. Coalter*, 9 Mo. 696, and since adhered to in *Lubbering v. Kohlbrecher*, 22 Mo. 596; *Paramore v. Lindsey*, 63 Mo. 63, and *Stillwell v. Patton*, 108 Mo. 352, "that alterations and erasures of written instruments will be presumed to have been made at the time of or anterior to their execution," and adopt for the sake of this case the contrary rule, still under its operations, plaintiff's testimony would be inadequate to authorize a judgment in his favor. Shift the burden upon the defendant H. Yates to explain the erasure that appears to have been made in the deed and over which the initial letter "H" now appears to have been written, according to the testimony of the deputy recorder and Mr. Riley, what presumption of law can be indulged, from any or all the other facts detailed by plaintiff's witnesses, that the deed was ever made out to G. A. Yates? And without that plaintiff's case must fail. No amount of proof that G. A. Yates had claimed the land as his own in talking to his daughter and son-in-law, or that it had been given in

for assessment as belonging to G. A. Yates by him-self or others in his behalf, or that the son-in-law had been shown a deed in which the name G. A. Yates appeared as grantee therein (without proof that the deed he saw was for the land in controversy and had been made by George W. Clark on January 4, 1891, or at some date anterior to that time) would be sufficient to establish the existence of such a deed, or to warrant the inference thereof, and without the once existence of such a deed shown, the mere fact that the initial letter "H" had been written over an erasure that appears to have been made upon the deed before the name "Yates," would not justify the inference that the erasure was for the purpose of destroying the initials "G. A." or that the deed had been orig-inally written to G. A. Yates. No such inference could be legally drawn from the appearance of the erasure, or from it and all the other facts detailed by the witnesses.

If it be further conceded that the declarations made by G. A. Yates to Mr. and Mrs. Frost, as to his ownership of the land, while not in the possession thereof, would be both competent and sufficient to estab-lish the right of ownership in said G. A. Yates or those claiming through him, so as to divest title out of H. Yates and invest the same in said G. A. Yates or his grantees in a proper proceeding, still in his suit by ejectment, when the inquiry is, not who is entitled to the deed to the land, but who has the title deed to the land, plaintiff on his own showing would not be entitled to a judgment. In fact Mrs. Frost while tes-tifying that her father told her that he had bought the land, said at the same time that he told her that it had been deeded to "H" (meaning the defendant herein). Thus while attempting to prove by the declaration of G. A. Yates, that he was entitled to the land, he discloses

by the same declaration that the title was not in him, but in the defendant H. Yates. Whatever suspicions may have been aroused in the mind of the trial court as to the ownership of the land, by the fact of the erasure as it appeared on the deed from Clark to H. Yates, and from the fact that the land had been given in for assessment in the name of G. A. Yates and that G. A. Yates claimed to his daughter and son-in-law that he had bought and paid for the land, it was manifest error for that suspicion to have been wrought into a judgment against defendant and in favor of plaintiff without some evidence of title in plaintiff to the land in suit.

The judgment of the trial court will be reversed. BRACE, P. J., and WILLIAMS and MARSHALL, JJ., concur.