ADAH A. PUTNAM et al., appellants,

*v.*

LYDIA A. CLARK et al., respondents.

1. A party who files a bill alleging that a paper made by him has been altered since its execution, and asking to have it canceled, must prove the fact of its subsequent alteration.

2. Such a party does not occupy the same position as if he were resisting a claim founded upon such altered instrument, and he cannot successfully ground his right to a cancellation of it upon a technical presumption of a false alteration arising from a suspicious circumstance merely.

On appeal from a decree of the chancellor, reported in *Putnam* v. *Clark, 2 Stew. Eq. 412.*

*Mr. Peter Bentley* and *Mr. Cortlandt Parker,* for appellant.

## I.

(*a*) Suspicious circumstances being shown to be connected with the alteration, it is necessary for the party relying on the instrument to explain satisfactorily the alteration.

(*b*) The circumstances of this case make the alteration appear not only suspicious, but also probably fraudulent.

(*c*) There has been no explanation of the alteration by the party relying on the instrument. The decree, therefore, should be reversed. *Hunt* v. *Gray, 6 Vr. 227; 1 Whart. Ev. § 629; Bailey* v. *Taylor, 11 Conn. 531; Beaman* v. *Russell, 20 Vt. 205, 213; 1 Greenl. Ev. § 564; Matthews* v. *Coulter, 9 Mo. 896; Ramsey* v. *McCue, 21 Gratt. 349; Wilde* v. *Armsby, 6 Cush. 314; Rankin* v. *Blackwell, 2 Johns. Cas. 198; Tillou* v. *Clinton and Esssex Ins. Co., 7 Barb. 564; Harker* v. *Gustin, 7 Hal. 45.*

## II.

From the proofs before the court, it will be presumed that the original assignment is in the defendants' possession, and that it

Putnam *v.* Clark.

is concealed by them. The most unfavorable inference is to be drawn against them. *1 Greenl. Ev. § 559; 2 Dan. Ch. Pr. 1817; 1 Whart. Ev. § 147; Greenl. Ev., § 558; McGuire* v. *Mobile, 42 Ala. 589; Holbrook* v. *Trustees, 28 Ill. 187; Chicago & N. W. R. R. Co.* v. *Ingersoll, 65 Ill. 399; Preslar* v. *Stallworth, 37 Ala. 402; Mason* v. *Tallman, 34 Me. 472; 2 Whart. Ev. § 1267.*

### III.

When the mortgage to which this mortgage had been assigned as collateral by Barrett was paid, Barrett became entitled to this mortgage, and he has never lost that right; he was at best but a trustee for the complainant, and she *is entitled* to all he was entitled to. *Paulin* v. *Kaighn, 5 Dutch. 480.*

### IV.

The defendant Clark's executors are not entitled to relief under their cross-bill, *i. e.,* to have the complainant pay the municipal charges which were upon the property at the time the premises were purchased by Hosea F. Clark. *Shinn* v. *Budd, 1 McCart. 234; Garwood* v. *Eldridge, 1 Gr. Ch. 150.*

*Mr. Hamilton Wallis,* for respondent

I. Redfield was a purchaser of the bond and mortgage for value and without notice, or was, at all events, subrogated to the rights of the insurance company.

II. Appellant cannot prevail without proving the assignment to Barrett to be a forgery, and there is no such proof. *Kerns* v. *Swope, 2 Watts 75; Harker* v. *Gustin, 7 Hal. 45.*

III. If not a forgery, the only ground remaining to appellant is that the respondents Redfield and Clark are bound by the equity existing between the appellant and Barrett.

Putnam *v.* Clark.

*Messrs. Collins & Corbin,* for defendants.

I. Hosea F. Clark was a *bona fide* purchaser for value without notice, of the bond and mortgage, and equity will protect him and his representatives. *Portarlington* v. *Soulby, 6 Sim. 356, 7 Id. 28; Dawson* v. *Prince, 2 De G. & J. 41; Pierce* v. *Faunce, 47 Me. 507; 2 Lead. Cas. in Eq. 57, and cases cited; Livingston* v. *Dean, 2 Johns. Ch. 479; Wilson* v. *Hill, 2 Beas. 143; Morton* v. *Rose, 2 Wash. C. C. 233; Woodruff* v. *Depue, 1 Mc-Cart. 168; Losey* v. *Simpson, 3 Stock. 246; Danbury* v. *Robinson, 1 McCart. 213; Bloomer* v. *Henderson, 8 Mich. 395; Potts* v. *Blackwell, 4 Jones Eq. 58; Starr* v. *Haskin, 11 C. E. G. 414; Mott* v. *Clark, 9 Barr 399; Van Hook* v. *Somerville, 1 Hal. Ch. 633; Vredenburgh* v. *Burnet, 4 Stew. Eq. 229; Kerns* v. *Swope, 2 Watts 75; Harker* v. *Gusten, 7 Halst. 45; Jones* v. *Smith, 1 Hare 43.*

II. The Clark defendants have good presumptive title to the bond and mortgage, and the complainant has not overcome it. *Stew. Dig. 770 § 150; Cumberland Bank* v. *Hall, 1 Hal. 215; N. R. Meadow Co.* v. *Shrewsbury Church, 2 Zab. 427.*

III. The complainant's suit cannot prevail, because of her gross negligence. *Westervelt* v. *Scott, 3 Stock. 80; Van Hook* v. *Somerville, 1 Hal. Ch. 633; Peabody* v. *Fenton, 3 Barb. Ch. 451; Trenton Banking Co.* v. *Woodruff, 1 Gr. Ch. 117; Hoff. Ch. Pr. 306.*

IV. Where there are equal equities possession must prevail. *Archer* v. *Bank of England, Doug. 637, 639; Wells* v. *Archer, 10 S. & R. 412; Ellis* v. *Kreutzinger, 27 Mo. 311.*

V. The defendants must not suffer because the original assignment, which is said to have been altered, is missing. *Hoffman's Ch. Prac. 306.*

VI. As to the cross-bill. *Shinn* v. *Budd, 1 McCart. 234; Garwood* v. *Eldridge, 1 Gr. Ch. 145; Young* v. *Hill, 4 Stew. Eq. 429.*

The opinion of the court was delivered by

REED, J.

The bill in this suit is filed by Adah A. Putnam and her husband, to secure the cancellation of a certain assignment of a bond and mortgage, which assignment purports to have been made by the complainants to one William C. Barrett.

It appears that in April, 1871, Lydia A. Putnam was the owner of a bond and mortgage for $12,000, made to her by one Jane M. Mackey. She was anxious to raise money by means of a sale of this security. Her attorney for many years had been William C. Barrett, of New York city. She communicated her wish to him, and he undertook to negotiate the sale of this mortgage. She says, in her bill, that he represented to her that he had a client, whose name was William C. Ramsey, who was making investments, and who would take this mortgage. It appears that she and her husband executed an assignment of this mortgage, acknowledged by herself and husband, and that the assignment was left in the hands of Mr. Barrett. The bill states that, subsequently, Barrett informed the complainants that Ramsey had not the money, and that he, Barrett, had not been able to procure it. The assignment remained in Barrett's possession, he paying the interest upon the said mortgage to Mrs. Putnam.

In March, 1875, Barrett assigned this mortgage, as collateral security, to the Relief Fire Insurance Company of New York. They re-assigned it to one Redfield, and he to the respondent, Lydia A. Clark.

The complainants became aware of the assignment by Barrett to the Relief Fire Insurance Company, after Barrett had absconded, and the complainants had sought in vain for their mortgage among his papers.

Their contention in this suit is, that Barrett had no title in the mortgage which he assigned to the fire insurance company; that the assignment which they executed at the time Barrett was to raise money by the sale of the mortgage was made to William C. Ramsey, the person from whom the money was expected; that the name William C. Ramsey was subsequently fraudulently changed to

William C. Barrett, and that respondent's title to this mortgage rests upon this forged assignment.

The prayer of the bill is, that the mortgage now in the possession of the respondents be delivered to complainants, and the assignment by Barrett be canceled.

It thus appears that the question which now presses for solution is whether the complainants have shown an alteration in the assignment which avoids it.

The original assignment has not been produced, and the efforts of the complainants to discover it have been unsuccessful. Nor does it appear that the assignment ever came to the hands of Mrs. Clark. The record of the assignment has been offered. The record shows an assignment acknowledged before Mr. Nettleton, a commissioner of New York, and witnessed by him. Underneath his name, and affixed to the attestation clause, are the words, "The words 'C. Barrett, New York,' written over an erasure."

Mr. Nettleton was sworn, and says that he has no recollection of this particular assignment. He says that when he has occasion to note an alteration, his habit is to make the notation over and not under his signature. He further says that when he desires to make such a notation, after he has signed his name, he makes it over his name, and if there is not space, he erases his name, makes the notation, and re-writes his signature under it. He admits that he has sometimes forgotten to write his name as a witness. The other witness, Mr. Putnam, has no recollection at all of making the assignment. There is no evidence offered on the part of the respondents relative to the execution of the assignment.

The contention of the counsel of appellants is, that there is, in connection with the proof of alteration, such suspicious features as throw upon the respondents the burden of showing that the alteration was made before or at the time of execution; that the respondents, having failed to prove the time and manner of the alteration, therefore the cancellation of the instrument should be decreed.

The question as to the burden of proof in cases involving the

validity of altered papers, usually arises where the actor grounds his right of action upon the altered instrument. In this class of causes, by a rule long settled in this state, no presumption arises to invalidate an instrument because, from inspection, an alteration appears to have been made. *Cumberland Bank* v. *Hall, 1 Hal. 215; North River Meadow Co.* v. *Shrewsbury Church, 2 Zab. 424; Hunt* v. *Gray, 6 Vr. 227.*

But while this is true, it is probably equally true that the appearance of the alteration itself, or slight circumstances connected therewith, may exhibit *indicia* of unfairness, which, while falling short of proof thereof, would throw upon the propounder of the instrument the burden of showing that the alteration was fairly made, and that a failure upon his part to make such proof would support a finding against the validity of the instrument. Cases collected in *2 Greenl. on Ev.* § *564, note.*

Were this a cause in which the respondents were asserting a claim based upon this assignment, the question would arise whether such indications of unfairness exist. Such a cause would be presented by a foreclosure suit instituted by the respondents to foreclose the mortgage assigned. A similar cause would appear if the complainants, ignoring the alleged assignment, should file a bill to foreclose the same mortgage, and the respondents should come in and assert their right to the same, by virtue of this assignment.

The present suit is not of this character. It is an attack upon the validity of a paper which it brings into court, and the avoidance of which it asks, upon the ground that it is a forged instrument.

The gravamen of the bill is that it was fraudulently altered. The complainants do not stand here defending against a person who produces an assignment and thereby asserts its genuineness, but they occupy the position of parties who themselves produce the instrument and assert its falsity. They must prove that falsity. They cannot rest their case upon a technical presumption arising from circumstances of suspicion. They must prove it by showing affirmatively a collocation of circumstances which

impress the mind with a conviction that the instrument was fraudulently altered. This the complainants have failed to do, and the decree of the chancellor should be affirmed.

*Decree unanimously affirmed.*