BEDGOOD & ROYAL *v.* McLAIN, and *vice versa*.

1. Where interlineations in a deed are in the handwriting of the officer who attested it officially, the presumption is that they were made at or before the execution of the instrument.

2. The act of February 28, 1874, touching the taxation of wild lands and a sale of such lands for non-payment of taxes, was operative upon the lands of minors who were represented by guardian both at the time the taxes accrued and when the sale was made, such guardian, although not clothed with the legal title, being embraced within the terms "legal representative," as contained in the 21st section of said act. The court erred in charging the jury to the contrary of this, and in excluding the evidence offered to prove that the minor in question had a guardian.

3. An execution for taxes issued by the comptroller-general against wild lands under the act of 1874 is not void because directed to all and singular the sheriffs of the State, instead of the sheriff of the county in which the land lies, though the act by its letter prescribes the latter as the proper direction, the levy having been in fact made by the sheriff of the county. *Warren* v. *Purtell*, 63 *Ga.* 428. Sections 890, 893 of the code apply as well to sales made under execution issued by the comptroller-general as to sales made under execution issued by the tax-collector of any county.

4. Where the tax *fi. fa.* under which land was sold was by mistake misdescribed in the deed made by the sheriff to the purchaser, which misdescription consisted of a recital that the tax execution had been transferred to a named person, the mistake may be pleaded by the defendant in a suit brought against him for the recovery of the land, and parol evidence is admissible to prove such mistake in connection with the fact that the execution, being produced in evidence, has no transfer entered upon it; and this

may be done without making other parties to the suit for the purpose, the plea containing no prayer for a reformation of the deed, and the object being only to resist the claim of the plaintiff and defeat the pending action.

*Judgment* on main bill of exceptions *reversed;* on cross-bill *affirmed.*
August 1, 1892.

Deed. Evidence. Wild land. Execution. Minor. Before Judge FISH. Dooly superior court. September term, 1891.

On January 13, 1890, H. V. McLain brought his petition against Bedgood & Royal to recover lot of land 175 in the 13th district of Dooly county. He alleges that he is the lawful heir and only legitimate child of S. J. McLain who died in 1873, a resident of Miller county; that soon afterwards petitioner removed to Texas where he has since resided; that he was a minor until January 12, 1889, on which day he arrived at majority; that his father owned the land in question and died seized of it; that it was a wild lot, and no entrance or occupation of it was ever had until about three years ago when plaintiff's duly authorized agent or attorney in fact had a house erected thereon, enclosed fifteen or twenty acres and put the same into cultivation, and has since had possession; that his mother died long since; that the lot was granted by the State on January 12, 1849, to J. R. Stanley of Laurens county, who on the next day conveyed it to Joseph Reese of Randolph county, who on October 23, 1870, conveyed it to S. J. McLain; and that on or about December 1, 1889, the defendants entered upon the land and commenced to cut timber, etc., claiming title under a Goldsmith tax sale in 1878. The prayer is for an injunction against further trespassing, for damages for the timber already cut, and for the cancellation of any paper title or color of title held by the defendants.

The defendants answered, that in 1878 the land was sold at public outcry by the sheriff of Dooly county

under a tax *fi. fa.* issued by Goldsmith, comptroller-general of Georgia, against said lot for its taxes, the same being unreturned wild land. It was bought by J. J. Clements, the highest and best bidder, who afterwards sold to William Stephens, who sold to Tillman West, who sold to defendants. All these purchasers believed they were buying a good title, the *fi. fa.* not being a transferred *fi. fa.*, but issued against this land specially. Defendants had a right to cut timber on the land because they obtained a good title under the tax sale, and neither the plaintiff nor any one for him has ever offered to redeem the land, nor has it been redeemed. His title is only pretended; neither he nor his father ever had any real title. Defendants have returned the land for taxation since 1878, and paid the taxes thereon, and plaintiff has paid no tax on it and has never returned it for taxation.

The defendants filed an amendment, to which the plaintiff demurred on the grounds that there were no proper parties thereto, and that it set out no sufficient legal defence. The overruling of this demurrer is assigned as error in the plaintiff's cross-bill of exceptions. This amendment alleged: A part of defendants' title is a deed from Kellum, sheriff of Dooly county, conveying the land in controversy, and made by virtue of a wild land tax *fi. fa.* against said lot of land for its taxes, which was properly levied thereon by said sheriff. By mistake a recital was made in that deed by the sheriff, to the effect that the *fi. fa.* was a transferred *fi. fa.*, which recital was a mistake, as in fact the *fi. fa.* was not transferred by the comptroller-general. The way in which the mistake was made was, that when the sheriff made the first sale of the lots of wild land he wrote his deeds before the sale, leaving the blanks for the name of the purchaser and the number of the lot, and made the recital in all of said deeds that the *fi. fas.*, the authority

for the sale, were duly transferred in writing by Gold-smith, comptroller-general : the fact being that all of said *fi. fas.* were transferred to J. H. Pate ; that when the sale was concluded and deeds made to the purchaser, quite a number of said deeds with the recital set forth therein, were unused ; that when the sheriff came to make the second sale of lots, at which sale the land in controversy was sold, there were a large number of lots sold, and when he came to make deed to the pur-chasers, in making the deed to J. J. Clements he got hold of one of the deeds prepared for the first sale and failed to notice that he had recited therein that the *fi. fa.* was transferred. The *fi. fa.* issued by Goldsmith, comp-troller-general, on October 1, 1877, against the land in question for the taxes due thereon for the years 1874, 1875 and 1876, and levied by the sheriff on said lot on March 7, 1878, was the *fi. fa.* under which the sale of the lot was made, and was the only *fi. fa.* against that lot that ever came into the sheriff's hands, and the sheriff never did have any transferred *fi. fa.* against said land.

At the trial the defendants offered in evidence the *fi. fa.* and the sheriff's deed. The deed was drawn on a printed blank and contained the words, " which said execution has been duly transferred by said comptroller to J. H. Pate of Pulaski county," the words "J. H. Pate" and "Pulaski" being written with pen and ink, and the other words being in print. The *fi. fa.* did not show any transfer. The plaintiff objected to the introduction of these papers on account of the variance mentioned, and also objected to testimony offered by the defendants to explain the variance, because, as he contended, the same could not be explained by parol, and if the deed was made under the transferred *fi. fa.* it was void. These objections were overruled, which ruling makes another assignment of error in the cross-bill of exceptions. The

explanatory testimony was by Kellum, who testified that he was sheriff of Dooly county in 1878; that the levy of the *fi. fa.* was made by him; that this was the *fi. fa.* under which the land in question was sold; that he never had any other *fi. fa.* against said land; that the sale and deed were both under this *fi. fa.*; that he received it from the comptroller-general and after the sale of the land he returned the *fi. fa.* to that officer and had never seen it since until the trial; that as sheriff he had never seen a transferred tax *fi. fa.* against any lot in the district and county where this land lies, and had never sold a lot in that district under a transferred *fi. fa.*; that at the June sales in 1878, there was not a single lot in the county sold under a transferred *fi. fa.*; that the sale of lots under the transferred *fi. fas.* was in March of that year; that at the March sales he sold several lots under wild land tax *fi. fas.* which had been transferred to J. H. Pate; that Judge Kibbee furnished him with the blanks to make the deeds, and he filled them out before the sale as far as he could so as to save time, and he thought this was the way the name of J. H. Pate got in the deed, as this was one of the blank deeds left over from those furnished him for the March sales; that he could not tell positively how the mistake occurred in the deed, stating that the *fi. fa.* had been transferred to J. H. Pate, but he was positive it was a mistake, for he knew the *fi. fa.* shown him was the one he sold under, and that he never at any time sold a single lot in the 13th district under a transferred tax *fi. fa.*, nor did he sell a single lot under a transferred tax *fi. fa.* at the June sales; and that J. J. Clements may have bought some of the lots under the transferred *fi. fas.* of J. H. Pate at the March, 1878, sale, but that he could not speak positively as to this. W. Brunson, of counsel for the defendant, testified that he received the *fi. fa.* tendered, from the comptroller-general. One of the defendants testified that there had

never been any offer to redeem the land; and there was no evidence that any such offer had been made by the plaintiff.

The verdict was in favor of the plaintiff; and the defendants' bill of exceptions makes several assignments of error. The first is, upon the admission in evidence of the deed from Joseph Reese to S. J. McLain, over objection that the interlineation therein of the words, "known as lot 175," was not sufficiently shown to have been made before or at the time of the execution of the deed. One of the witnesses before whom the deed purported to have been executed was E. H. Platt, notary public. Mrs. Holt testified that her father, E. H. Platt, was the notary public who witnessed the deed, that it was in his handwriting and so were the words interlined, and that she knew his handwriting well, having seen him write often, and having been his assistant in preparing his papers. The ink with which the interlineation was written seemed to be the same as that with which the signatures were made.

The defendants introduced evidence tending to show that the plaintiff had a guardian, one Mize, who was appointed in 1873, and who in 1875 procured an order for sale of certain land in Miller county belonging to the plaintiff. It is assigned as error that the court ruled out all this testimony and instructed the jury not to consider it, ruling that in this case it makes no difference whether or not the plaintiff had a guardian.

Further it alleged that the court erroneously held that if the plaintiff was a minor at the time of the tax sale, whether the *fi. fa.* under which it was made was transferred or not transferred, such sale did not affect his rights if he was the true owner at that time; and that the land of a minor who was alive could not be sold under the provisions of the law of 1874, providing for the sale of wild land unreturned for the payment of taxes.

The court charged that if the State granted the land to Stanley, and Stanley duly conveyed it to Reese, and Reese duly conveyed it to McLain, and McLain died leaving the plaintiff as his sole heir at law, and within seven years after he attained majority the plaintiff brought this suit, he would be entitled to recover, provided the deeds through which he traces his title from the State are right and valid. This is assigned as error. The defendants further alleged that, though there was no written request for it, the court erred in not charging, as a necessary part of the case, that if the plaintiff had no guardian he must have offered to redeem the land within one year after his majority; this having been argued and insisted on for the defendants. And they say that the charge as a whole did not cover the issues made in the case, and was wrong on the issues submitted to the jury.

G. W. Wooten, Gustin, Guerry & Hall and J. W. Haygood, for plaintiff.

W. Brunson, Jr., Busbee & Crum and Martin & Smith, for defendants.