[No. 6543.   Decided March 11, 1907.]

F. C. LAWRENCE, *Appellant*, v. J. D. MEENACH *et al.*,
*Respondents.*[1]

MINES AND MINING—SALES—FRAUD—EVIDENCE—SUFFICIENCY. Allegations of fraud in the sale of mining stock by plaintiff are not sustained by the preponderance of the evidence, where it appears that plaintiff received for his claim, then regarded of little value, a sum certain and an agreement for 100,000 shares of stock to be thereafter issued, the agreement not specifying the amount of the capitalization, plaintiff claiming that the capitalization was to be 500,000 shares and his share a one-fifth interest, and that the contract was afterwards fraudulently altered, it further appearing that plaintiff, shortly after the sale, accepted the 100,000 shares, showing on their face a capitalization of ten million, without objection or making claim to a greater interest for over four years, during which time he had sold his stock and the mine had been developed and proved to be of great value.

Appeal from a judgment of the superior court for King county, Griffin, J., entered April 4, 1906, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action on contract.    Affirmed.

*Fenton & Crews, G. C. Israel,* and *H. Bostwick,* for appellant.

*George E. de Steïguer* and *Piles, Howe & Farrell,* for respondents.

ROOT, J.—Upon January 3, 1901, appellant was the owner of a mining claim near four other claims in Alaska. Upon that day he entered into a written agreement with respondent Meenach, a portion of which contract, as introduced in evidence herein, was as follows:

"That whereas the second party has on this day sold and conveyed to first party all of his interest in those five certain quartz mining claims in Prince William Sound Mining

[1] Reported in 88 Pac. 1120.

District, Territory of Alaska, called the 'Gladhaugh,' the 'Copper King,' the 'Copper Queen,' the 'Convict' and the 'Solo,' for the agreed price and consideration of two thousand dollars in cash and one hundred thousand shares of the par value of fully paid and nonassessable stock in such company, as may be capitalized or incorporated by said first party herein for the purpose of owning and operating the said mines, regardless of the amount of capital stock of such company."

Meenach was representing one John Lober Welch, a wealthy resident of Philadelphia. The latter, with other parties, subsequently incorporated the Ellamar Mining Company of Alaska. This corporation took over the five mining claims mentioned, besides several other claims, water rights and other property, and capitalized for $10,000,000. In February, 1903, appellant received a certificate for one thousand shares of the capital stock, being $100,000 worth (par value) of the stock referred to in the agreement. He at that time made some objection to the stock on account of its not being nonassessable, but accepted the same and subsequently sold it to one Blei. This sale appears to have been made in February, 1904. At this time appellant did not regard the stock as of much value. It appears from the evidence that he took a receipt from Blei, exempting himself from any liability on account of the stock, as he believed the title to the property was imperfect. The respondent corporation, at an expense of something over $200,000, developed the property, which proved to be very valuable. The pleadings admitted that it was worth at the time of the trial at least $1,000,000, and there was evidence tending to show that it was worth four or five million, possibly twenty million.

Appellant claims that the agreement between himself and Meenach when signed did not contain the words "regardless of the amount of capital stock of such company." He says that the instrument was drawn in duplicate, he taking one copy and Meenach the other; that on the next day or a few days thereafter, he met Meenach on the street; when Meenach

asked' for appellant's copy, saying that he wanted to make some little alteration therein; that a few hours later Meenach returned the copy to him, but he did not look at the same until he reached home that evening, when he found that the words above referred to had been inserted therein; that the next day he complained to Meenach thereof, but was told by the latter that he desired to have it that way in order to have a free hand in getting his people in the East to take hold of the matter and advance money to develop the properties, and to incorporate in any manner that they might desire, but promising that appellant should have a fifth interest in whatever corporation was formed; that Meenach promised that the capitalization should not exceed $500,000, but if it did, appellant was to have a fifth of the stock. Meenach denies all this, and there is considerable evidence of other parties to the effect that the contract as introduced in evidence was the same as when signed, except that a few words in appellant's copy had been partially erased since that time. Meenach testifies that appellant was anxious to sell, saying that he was "broke" and needed money to go into business. Appellant testifies that, after calling Meenach's attention to the change in the agreement, he—appellant—went to Philadelphia and talked with Welch, and that the latter assured him that he should have his fifth interest in the stock whatever the amount might be. Prior to the trial Welch had died, and it was claimed by respondents that this evidence was incompetent, although admitted by the trial court.

It is the contention of the respondents that no change was made in the contract after signing; that it was exactly as both parties agreed that it should be. They also urge that the appellant was guilty of laches. The contract in question was entered into on January 3, 1901, while this suit was not commenced until April 29, 1905. As the appellant, according to his own testimony, ascertained that the contract was changed on the same day that the change is alleged to have occurred, and as he subsequently received and accepted

his certificate of stock which showed upon its face that the company was capitalized at $10,000,000, and as he thereafter sold said stock, respondents urge that this long delay and manner of dealing in the premises is inconsistent with the idea of any fraud having been practiced against him.

It will be seen that this case involves principally questions of fact. The burden was upon appellant to prove the fraud which he alleged, and upon which he relies as a basis for relief. The trial court found "that none of the fraudulent representations alleged in the complaint were made to plaintiff by the defendants, and none of the fraudulent acts alleged in the complaint were in fact done by the defendants, or either of them." The court also found "that on the 3d day of January, 1901, the value of said mining claims was almost entirely unknown." A careful examination of the record fails to convince us that the trial court reached an erroneous conclusion. We do not believe any good purpose would be served by a discussion or analysis of the evidence. It is conflicting upon material points. The burden of proof was upon appellant. Taking all of the evidence into consideration, we cannot say that the appellant established his case by a preponderance of the evidence. This being true, we cannot disturb the trial court's judgment. It is therefore affirmed.

HADLEY, C. J., FULLERTON, RUDKIN, MOUNT, CROW, and DUNBAR, JJ., concur.