BARKER v. STROPPEL.

(Supreme Court, Special Term, Orange County.　September 10, 1910.)

1. ALTERATION OF INSTRUMENTS (§ 29*)—INSERTION OF CLAUSE IN LEASE—EVI-
DENCE—WEIGHT.

Evidence *held* to show that a renewal clause was not fraudulently in-
serted after execution of lease.

[Ed. Note.—For other cases, see Alteration of Instruments, Dec. Dig. §
29.*]

2. ALTERATION OF INSTRUMENTS (§ 27*)—INSERTION OF CLAUSE—BURDEN OF
PROOF.

The burden was on lessor to show that a renewal clause was fraudu-
lently inserted after the lease was executed.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig.
§§ 230–247; Dec. Dig. § 27.*]

Action by Charles E. Barker against Karl Stroppel.　Judgment for
defendant.

Henry Kohl (Charles W. U. Sneed, of counsel), for plaintiff.
A. H. F. Seeger, for defendant.

TOMPKINS, J.　A careful reading of the briefs of counsel, a re-
view of all the testimony, an examination of the exhibits, and an analy-
sis of the character, interests, and motives of the witnesses, leads me
to the conclusion that the plaintiff has failed to make out his case by
that fair preponderance of the evidence that the law demands to en-
title him to a judgment in his favor upon the issues of fact presented
by the pleadings.

This is an action in equity to have the court adjudge fraudulent and
void what purports to be a five-year renewal clause or option in a
lease made by the plaintiff to the defendant, on the ground that such
renewal clause or option was not agreed to by plaintiff, and was not a
part of the written lease when it was executed by the parties thereto.
The clause in question reads as follows:

"The party of the second part shall have the privilege to renew this lease
for the same term on the same terms and conditions, and the premises are to
be occupied as a hotel or saloon."

Plaintiff claims that this renewal clause or option was fraudulently
inserted in the lease after it was executed, either by the defendant or
by some one in his behalf.　The burden then rests upon the plaintiff to
establish by a fair preponderance of the credible evidence the fact
that the disputed clause was not a part of the original lease, and that
the lease was altered after its execution.

The disputed questions of fact bearing upon the main question as
to whether the original agreement contemplated a renewal privilege,
and whether the clause in question was inserted in the lease at the time
it was drawn and executed, are as follows:

First. Was the lease read at the time it was executed by the par-
ties thereto?

Second. Did the lease at that time contain the renewal clause in question?

Third. Was the plaintiff at the time he made his agreement with the defendant willing to lease his premises for a longer term than five years?

Fourth. Did the parties hereto make admissions inconsistent with their present claims?

Fifth. Did the defendant make statements to the effect that his lease expired May 1, 1910?

Sixth. Was the renewal clause in question written with the same ink and pen, and at the same time, as the rest of the written part of the lease?

Upon these several questions which go to the main question in the case, the plaintiff has failed to sustain the burden of proof, and, on the contrary, the preponderance of evidence seems to be with the defendant.

As to the first question—"Was the lease read at the time it was executed by the parties hereto?"—the plaintiff says that it was not, while the defendant and Nelson, a justice of the peace, who wrote the lease and took the acknowledgments of the parties thereto, say with equal positiveness that the paper was read in his office in the presence and hearing of the plaintiff before it was signed.

Did the lease at that time contain the renewal clause in question? The plaintiff says it did not, and that he never agreed that it should contain such a clause, while the defendant and Nelson testified that it did contain the clause in question when it was read and executed, and Mr. Nelson further testified that the plaintiff instructed him to draw the lease for a term of five years, with the privilege of five years more, and that, "they told me how they wanted the lease written, and it was written according to what they said." Max Dahlman and Augusta Dahlman agree in saying that on the second Sunday after the defendant took possession of the premises in question they saw and read the defendant's copy of the lease in question, and that at the lower part of the first page it contained a provision granting to the defendant the privilege of a five-year extension. James Babcock, a witness for the plaintiff, testified that he saw the defendant's copy of the lease, and that at that time it did not contain the renewal clause in question. So that on this question we have the testimony of the plaintiff and the witness Babcock offset by the testimony of the defendant and his witness Nelson and the two Dahlmans. The plaintiff claims that the Dahlmans are friends of the defendant, and for that reason are interested or biased witnesses, while the defendant claims that Babcock was an interested and dishonest witness. I can find little, if any, difference in the character and motives of these witnesses, and have come to the conclusion that the testimony of one is as reliable and trustworthy as the testimony of another.

When the plaintiff received his copy of the lease from Mr. Nelson about two years after its execution, he claims that he observed that it had been altered, and that the clause in question had been inserted, and Michael Maxey, to whom he exhibited it, testified that he observed that the ink was of a different color in the renewal clause than of the

other written parts of the lease, and lawyer Dimmick says at about that time he observed a different color in the ink in the renewal clause; while Mr. Kohl, of counsel for the plaintiff, also testified that at about that time he observed that the inks were of different colors, but these witnesses do not agree as to whether the ink of the renewal clause was lighter or darker than the other written parts of the lease. It does appear to me from an examination of the duplicate copies of the lease in question that the last three lines of the renewal clause are somewhat lighter in color than the written lines above them, but it appears to me that that was caused by an application of blotting paper to the writing when the draughtsman finished the last line of the page.

Was the plaintiff at the time he made his agreement with the defendant willing to lease his premises for a longer term than five years? The plaintiff says that he was not, while the defendant says that he was; and in this the defendant is corroborated by the testimony of Joseph Schatten, who testified that he had a conversation with the plaintiff in reference to a sale of his saloon in 1905, prior to the plaintiff's negotiations with the defendant, and that the plaintiff said:

" 'I am sick and disgusted with this business, and I wish somebody would come in and buy me out.' I said: 'If a man would come in to-morrow, and would want to buy you out, in a few days you would want to go back in the business again.' He said: 'If I get a suitable man, I will give him a lease for five, ten, or fifteen years, to suit himself.' "

And this witness testified that he reported the substance of the plaintiff's conversation to the defendant, and, as a result of his talk with the defendant, he went back the next night to the plaintiff's place, and told him that he had a man who would buy him out, and lease the property, and that he would be up there at 10 o'clock that evening, and mentioned the defendant as the man, whereupon the plaintiff said:

"If Karl Stroppel wants it, he is my man, and he can have anything he wants that I have got."

And this witness further testified that later that night, and after the plaintiff and the defendant had met and talked the matter over, the plaintiff said to the witness, "It's all settled."

The justice of the peace, Nelson, who drew the lease, testified that the plaintiff and the defendant came to his office together, and told him what they wanted, and that he drew the lease in accordance with their instructions, and that it was read to them, and that they handled the papers and read them themselves; and that, when the papers were signed, they were in the condition in which they now are, with the exception of a change in the date that was afterwards made with the consent of both parties.

Did either of the parties hereto make any statement or admission inconsistent with their present claims? The plaintiff's witnesses Williams and Jennie Babcock testified that the defendant told them that his lease expired May 1, 1910. This testimony is denied by the defendant, while on the other hand the witnesses Wootten, Lewis, Jane Wootten, Charles Wootten, and a lawyer by the name of Gump testified in substance and effect that the plaintiff admitted to them that he had leased the premises in question to the defendant for five years,

with a privilege of five years more. The testimony of these witnesses is contradicted by the plaintiff, who says, in effect, that he never made such a statement.

Garvalho, the plaintiff's handwriting expert, testified that, as a result of a chemical and microscopic examination of the inks used in the handwriting on the first page of the lease in question, it was his opinion that the renewal clause in question had been written with a different ink than that used in the rest of the writing; while the defendant's handwriting expert Kinsley gives it as his opinion as the result of similar tests that the ink was all of one quality and color, and in the contradictory testimony of these two well-known handwriting experts we have emphasized again the unreliability of that kind of testimony. Had I nothing but the sworn testimony of these two handwriting experts as my guide in this case, I should disregard the testimony of both, and hold that the plaintiff had failed to prove his case, but the testimony of the defendant's witness Kinsley was supplemented by tests made in court by the use of some kind of acid and powerful magnifying glasses, in which the court participated, and by which it seemed at least to be demonstrated that the ink in the disputed clause was of the same color as that used in the rest of the instrument. Whether that result was accomplished by the use of some particular kind of acid, and whether a different acid would show a different result, I do not know, but the appearance of the writing in question, and a comparison of it with the other writing and ink upon the copies of the lease in evidence seem to me to corroborate the testimony of the witness Kinsley to the effect that all of the writing was with one quality and color of ink. The appearance of the lease in question and the disputed clause on the first page thereof strongly indicate to my mind that all of the first page was written at the same time and with the same pen and ink. It is almost impossible, even with the same pen and ink, to have writing which is done at different times on a single sheet of paper appear as if all were written at one time.

The plaintiff testified that he gave instructions to Nelson that the lease was to contain a statement that the premises were to be used for a hotel or saloon, and plaintiff also testified that, when the lease was executed, it contained such a statement, and we find at the end of the disputed clause, and as a part of it, these words, "And the premises are to be occupied as a hotel or saloon," the first two of which words are on the same line with the words "terms and conditions," which are the last words of the disputed renewal privilege. So that, if the words "and the premises are to be occupied as a hotel or saloon" were read from the lease at the time of its execution, as stated by the plaintiff, then it follows that the renewal clause was also there at that time.

My conclusions upon the whole case are that the plaintiff has not only failed to sustain the burden of proof that the law puts upon him, but that the preponderance of evidence upon the disputed questions cf fact is with the defendant, and that the defendant is entitled to judgment dismissing the complaint upon the merits, and to judgment in his favor against the plaintiff directing specific performance of the renewal privilege in question, with the costs of this action.