GEORGE OTTEN, Appellant, v. ERNEST OTTEN and DOROTHY OTTEN, his Wife.—156 S. W. (2d) 587.

Division Two, October 25, 1941.

*Morgan M. Moulder* and *Bradshaw & Fields* for appellant.

*W. M. Raines* for respondents.

BOHLING, C.—George Otten instituted this action agáinst Ernest Otten and Dorothy Otten, husband and wife, his son and daughter-in-law, to correct a certain warranty deed conveying approximately six acres of unimproved land, suitable for a tourist cabin site, on the Lake of the Ozarks in Camden County, Missouri, by striking therefrom provisions passing an undivided half interest therein to said Ernest Otten and to quiet the title to said real estate

in George Otten. The decree nisi adjudged. that George Otten and Ernest Otten each had an undivided one-half interest in the real estate. Plaintiff appealed.

The case involves alterations in a general warranty deed of William D. Jeffries and Valonia E. Jeffries, dated May 1, 1931, and acknowledged May 8, 1931, before Barney Reed, the draftsman, a lawyer and a notary public. The original instrument was filed here. It is on a printed blank form with the blanks filled in in longhand. As originally drafted, it must have passed title to George Otten as party of the second part, because: In apparently different ink, unless immediate blotting affected the color of the ink, and apparently by a different pen, the words "and Ernest Otten" are added immediately following "George Otten" and the letters "ies" are written over the letter "y" in the word "party" of the phrase "party of the second part" in the clause designating the parties to the instrument; the letters "ies" are written over the letter "y" in the word "party" in the clause acknowledging receipt of the consideration paid by the "party of the second part;" the letters "ies" are written over the letter "y" in the word "party" of the phrase "party of the second part" and the word "their" is written over the word "his" in the phrase "his heirs and assigns" in the granting clause; the letters "ies" are written ▇▇ over the letter "y" in the word "party" of the phrase "party of the second part" and the word "their" is written over the word "his" in the phrase "his heirs and assigns" in the warranty clause; but the phrases "party of the second part and his heirs and assigns" in the habendum clause remain as originally written. The deed, with the alterations thereon, was recorded, August 11, 1931. The trial occurred April 22, 1938.

▇ Plaintiff says that the deed, on its face, established material alterations; that defendants' claim of title rested upon said alterations; that plaintiff did not prove the alterations had been made by defendants or at defendants' instigation; that defendants failed to show that the alterations were made before the delivery of the deed or that they were made with the consent of the interested parties, and that the case resolves itself into a question of the burden of proof.

The issue usually arises when a plaintiff grounds his right of action upon an altered instrument and defendant pleads *non est factum.* Kircher v. Dunnington, 325 Mo. 355, 362, 29 S. W. (2d) 138, 141[1]; Parker v. Staley (Mo. App.), 55 S. W. (2d) 332, 333[3]; Bente v. Finley (Mo. App.), 83 S. W. (2d) 155, 159[4]; Mechanics' Am. Nat. Bk. v. Helmbacher, 199 Mo. App. 173, 177, 201 S. W. 382, 384[1]; Collison v. Norman (Mo.), 191 S. W. 60, 62[4]; Carson v. Berthold & Jennings Lumber Co., 270 Mo. 238, 248, 192 S. W. 1018, 1021[8]; Lampe v. Franklin Am. Trust Co., 339 Mo. 361, 377, 96 S. W. (2d) 710, 718[3, 5-9]. In Hardt v. Phillips Pipe Line Co. (Mo. App.), 85 S. W. (2d) 202, 204 (also cited by plaintiff), where

the Hardts attacked a pipe line right of way deed across their land, their testimony established the alteration of the instrument. Plaintiff stresses certain principles quoted in Kircher v. Dunnington, supra, which cites authorities and involved a change in notes originally drafted in ink upon a printed form by the substitution of the figure "5" in indelible pencil over the word "no," faintly erased, in a phrase reading: "with interest from date at the rate of no per cent. per annum." This and other Missouri cases state a presumption exists that alterations and erasures of written instruments, in the absence of evidence to the contrary or suspicious circumstances, were made before or contemporaneously with the execution and delivery of the instrument and it is for the party attacking the instrument to show otherwise (Matthews v. Coalter, 9 Mo. 696, 701[3] ; 3 C. J. S. 996, n. 26); but the prima facie genuineness of an instrument is destroyed where the alteration is apparent on its face and is suspicious in itself and the presumption of change at or before execution does not obtain (3 C. J. S. 997, n. 32). Generally changes written in a different ink and in a different handwriting raise a suspicion requiring explanation, although the rule is different in some jurisdictions. [3 C. J. S. 1007, nn. 22, 23.] "In such cases the burden may be said to be shifted, or that the opposite party is under the necessity of meeting a prima facie presumption raised against the instrument." [3 C. J. S., p. 992, n. 87.] The cited cases appear to be similar to plaintiff's Missouri cases. Mechanics' Am. Nat. Bk. v. Helmbacher, supra, states: ". . . if the note on its face appears to be in different handwriting, written at different times and in different ink, this destroys the presumption of integrity." Lampe v. Franklin Am. Trust Co., supra, also quotes the foregoing and, with respect to the integrity of a similar alteration; "'the law presumes nothing, and the question as to the time when, the person by whom, or the interest for which, the alteration was made are matters of fact to be found by the jury upon proof adduced by the party offering the instrument in evidence,'" (Consult 3 C. J. S. 998, n. 37; 2 Am. Jur. 671, sec. 109; 6 Williston on Contracts 5358, sec. 1917); and points out that the burden of proof remained with the plaintiff. Missouri Statutory provisions exist with respect to materially altering negotiable instruments. [Secs. 3139, 3140, R. S. 1939.]

In the instant case plaintiff's petition charged that defendant Ernest Otten ▌ wrongfully and fraudulently did alter the deed offered in evidence by inserting the name "Ernest Otten" as one of the grantees therein, etc. The burden of the charge is that the deed was fraudulently altered. Plaintiff is not defending against one who asserts the genuineness of the deed. Plaintiff produced the instrument and asserted its falsity. A plaintiff seeking relief from an alleged alteration must establish its falsity. [Smith v. Parker (Tenn.

Ch. App.), 49 S. W. 285, 288; Barker v. Stroppel, 124 N. Y. Supp. 865; Putnam v. Clark, 33 N. J. Eq. 338; Lawrence v. Meenach, 45 Wash. 632, 88 Pac. 1120, 1121; Riley v. Riley, 9 N. D. 580, 84 N. W. 347, 349; Town of Solon v. Williamsburgh Sav. Bk., 114 N. Y. 122, 21 N. E. 168, 170.]

We think defendants met any burden of going forward with the evidence to such an extent as to not call for our interference with the finding of the chancellor.

In 1931 George Otten and Ernest Otten were of the approximate ages of sixty and thirty years, respectively. George Otten was of limited education but had approximately $17,000 in cash. He testified he could not read but could sign his name. Ernest testified his father could read but not "fluently." About February, 1931, George married for the third time. The Ottens had discussed engaging in business together. The father's version was that his son was to receive half of the proceeds from the business but was to have no interest in the property. The son's version was that his father "was to own half of the property and I was to own half of the property." A written contract for the purchase of the real estate involved was executed May 1, 1931. It names W. D. Jeffries and Valonia E. Jeffries as first parties and George Otten and Ernest Otten as second parties; recites that the first parties sell the real estate (describing it) to the second parties and: "That said second parties pay $200 of the purchase price now, and the balance of $650 to be held in escrow by the First National Bank, Linn Creek, Missouri, to be delivered to said first parties upon the delivery of deed to said real estate." It bears the signature of all the parties named. The contracting parties met at the bank mentioned, and were all present when the contract was typewritten by Miss Katie Foster. Miss Foster could not recall the occurrence. The son testified that the contract offered in evidence was handed to him and that he had had possession of it ever since. George Otten testified that he, not he and his son, purchased the land; that Mr. Jeffries asked him how he wanted the deed and he replied: "to myself; I am paying for it;" that Mr. Jeffries told Miss Foster what to write; that he depended upon his son to have it right; that the contract was not read to him; that he saw his son sign the paper and then he signed it; that about six months later he was informed Ernest had the deed and when he asked his son for the deed his son refused to give it to him, stating it was none of his business; that he had Mr. Reed go with him to the recorder's office and ascertained that his son was named as co-grantee.

Mr. Jeffries testified that he did not know anybody was buying the land but George Otten; that the transaction occurred seven years ago and he did not remember whether the contract was read by anyone to see if it was all right but was certain he read it; that he was of opinion George Otten and he told Miss Foster what to write; that

a few days later he had Barney Reed prepare the deed, the Ottens were not present and he did not then have the contract with him; that he intended to convey to George Otten, thought he had; that he received George Otten's check for $200 when the contract was executed and for $650 when he delivered the deed to the bank; and that he never consented to or authorized any person to write Ernest Otten's name in the deed or to change the words "party" and "his" to "parties" and "their," respectively. At one time in the cross-examination, witness testified: "Well, it was just like I told you yesterday, if Erniest's name was ever mentioned in the deed or contract either, I don't remember it."

Ernest Otten testified that all participated in writing the contract; that his father heard it dictated, knew what was in it, if he did not read it, and understood witness was to have a half interest in the real estate and not merely a half interest in the business; that several months later he went to the bank, secured the deed, had it recorded, directed it be mailed to him, and had it in his possession ever since; that, asked if he had shown the deed to his father, he said he showed it to him yesterday; that he never made any remarks to his father about the deed; that there was never any disagreement in regard to ▆▆▆ who owned the place, his father knew witness owned half of it, never complained about it; that the first he knew his father was dissatisfied was when the petition was served on him; that so far as he knew the deed was in the condition he received it from the bank, and that neither he, nor anyone for him, made any changes in the deed.

The Ottens went into immediate possession and within two to four months expended between $6000 and $8000 for improvements, the father paying for all or practically all of said improvements.

Plaintiff waited almost seven years before taking action. His witnesses' present memory of what they intended to do and what they did in 1931 was to the effect they contracted to and did convey to plaintiff alone. All parties, Mr. and Mrs. Jeffries, George and Ernest Otten, were present when the contract was dictated to Miss Foster. Miss Foster did not know what to typewrite without being informed. If plaintiff was unable to read, he heard the contract dictated as did the Jeffries. Testimony of witnesses that they read the contract or of their presence when it was dictated refutes the testimony that the conveyance was to be to plaintiff only. The deed was not effective until delivery and the Jeffries were not entitled to receive the $650 placed in escrow until they delivered a conveyance naming George Otten and Ernest Otten as grantees. While there is evidence casting doubt on the integrity of the deed, other evidence tends to establish its genuineness, including the contract of purchase under which the grantors received the consideration. Plaintiff admittedly knew the contents of the deed about six months after the transaction. Mr. Reed denied that he had advised plaintiff not to take immediate

action because plaintiff might cause his son trouble, stating plaintiff never talked to him about the deed being altered, the explanation advanced by plaintiff for withholding the institution of suit. Mr. and Mrs. Rex Cox, friends of the Ernest Ottens, testified to admissions on the part of George Otten of his son's half interest in the property.

Lawyer Reed was aged and testified his "eyes were not so good." He could not recall the transaction, had no memory of it. However, he testified he did not insert the name of one of the grantees in the deed after it had been executed. This was of some probative force. He was unable to positively identify the "ies" written over the "y" in the words "party" and the words "their" written over the words "his," remarking about his inability to see plainly and stating some of the changes didn't look so much like and some looked more like his handwriting. The record indicates he used a reading glass. He did testify: "But, in the beginning of the deed here, 'George Otten and Ernest Otten,' that looks absolutely like my handwriting." No attempt was made to show the handwriting was not Mr. Reed's. In a case where the ink appeared to be the same, a presumption was indulged that interlineations in a deed in the handwriting of the attesting officer were made at or before execution. [Bedgood v. McLain, 89 Ga. 793, 198, 15 S. E. 670, 671.] A reasonably timely suit, or possibly an investigation, would have avoided the clouded recollections of details by the witnesses occasioned by the lapse of time and evidenced by the record. We think the evidence made an issue of fact when weighed against a presumption; and if the chancellor, in the circumstances, gave credence to defendants' witnesses, fortified by the provisions of the contract of May 1, 1931, we should not interfere.

Plaintiff, citing Rains v. Moulder, 338 Mo. 275, 285 [4, 5], 90 S. W. (2d) 81, 86[11-13], contends he is entitled to compensation for improvements made in "good faith" and "prior to his having had notice" of his son's adverse interest under Sec. 1548, R. S. 1939. The facts distinguish the cases. The record does not develop the issue in detail. Plaintiff refers to testimony that the improvements were made within six months. There is other testimony that in 1935 a tornado destroyed most of the buildings. A finding nisi was warranted that plaintiff was present when the contract of purchase was dictated, heard it dictated and had notice of his son's adverse claim. "Notice in this connection, does not mean direct and positive information, but anything calculated to put a man of ordinary prudence on the alert, is notice." [Lee v. Bowman, 55 Mo. 400, 403; Brown v. Baldwin, 121 Mo. 106, 114(II), 25 S. W. 858, 859(2).]

The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.