Daisy M. Drawyer, Appellant, v. Fonny King and Fonny King, Administrator of the Estate of Earl S. King, Deceased, Respondents, No. 41283—221 S. W. (2d) 150.

Division Two, June 13, 1949.

*Arthur H. Garner* for appellant.

*Charles D. Tudor* for respondent.

WESTHUES, C.—This is a suit in two counts. The first is to determine title. In the second, plaintiff asks for partition. The trial

court decreed the defendant King owned the whole title and plaintiff appealed.

Daisy Drawyer claimed that she and one Earl S. King purchased the property in question, Lots 8 and 9, block 22, Holland's Addition to Asbury, Jasper County, Missouri; that her name and King's name were inserted in the deed as grantees but that without her consent her name was stricken. She charged that this was done by Earl S. King or by someone for him after the deed was executed. Fonny King, the defendant, was a brother of Earl S. King. It was alleged in the petition that Fonny owned a one-half interest in the property as an heir of Earl. The answer was a general denial. The evidence is not clear as to whether there were any other heirs. We presume that there were not since it seems to have been taken for granted at the time of the trial that Fonny was the only heir of his brother Earl. The record shows that the deed was signed and acknowledged by four persons, C. V. Hughes and his wife, Lula Hughes, and Raymond Wofford and his wife, Dolly Wofford. The Hughes' acknowledgment was taken in Jasper County, Missouri, on April 8, 1942; that of Raymond Wofford on April 24, 1942, in the state of Nevada; and that of Dolly Wofford on May 9, 1942, in the state of California. The Hughes testified in this case. Their evidence was that when they signed and acknowledged the deed the name of plaintiff Daisy Drawyer appeared on the deed. Mrs. Hughes testified as follows:

"Q. (By Mr. Garner) 'I will ask you if the Plaintiff's Exhibit one, the deed in question, showed the erasures at that time,     or has it been changed since you signed it?'

"A. 'Why, it has been changed since I signed it.'

"Q. 'Whose name has been stricken from that deed that was there at the time?'

"A. 'Daisy Drawyer.' "

The evidence of Mr. Hughes was similar. A number of witnesses testified that the deceased on various occasions made statements to the effect that he and Mrs. Drawyer had purchased the property together. The evidence further shows that the parties, Earl S. King, deceased, and Mrs. Drawyer, lived on the premises for about ten years and until a short time before Earl's death. The deed was found among Earl's papers. The deed had the following notation on it evidently placed there by the recorder: "Mail to Earl S. King, P. O. Box 517, Asbury, Mo." The insurance agent who issued the policies covering the property testified that both King, the deceased, and plaintiff were named as the owners of the property in the policies; and that plaintiff always brought the money in payment of the premiums. The trial court in a memorandum made a finding of facts. We quote pertinent portions thereof. They are as follows:

"Therefore I will rule that the testimony of the Hughes was admissible. However, the proof is not, in my opinion, strong enough

to warrant a reformation of the deed. The evidence is not conclusive that the scratch marks over the plaintiff's name were not there when the deed was delivered to the deceased more than a month after acknowledged by the Hughes. There is nothing to indicate that the deceased Earl King or anyone for him altered this deed. There is nothing suspicious in the alteration itself since it apparently is in the same ink as the rest of the deed. Certainly there was time for the alteration between the time the Hughes signed and the delivery to the deceased.

"The presumption is in favor of the deed as altered unless there are suspicious circumstances on the deed itself, or proof that the deed was altered after delivery. This rule is so well known that I shall not cite any authorities for that rule."

It is evident that the trial court's theory of the law was that it was incumbent upon the plaintiff to prove that her name was stricken from the deed after its delivery; that if the change was made after the deed had been signed and acknowledged and before delivery, plaintiff could not obtain relief. We do not agree. It was in evidence that the deceased had made statements that he and the plaintiff had purchased the property together. The fact that the two were and had been living on the premises adds weight to plaintiff's contention. The positive evidence of Mr. and Mrs. Hughes discloses that plaintiff's name appeared on the deed as a grantee when they signed the instrument. The notary public testified he did not remember. Had there been such a plain alteration on the deed as disclosed by the photostatic copy in the record, it is probable that the notary public would have noticed it and remembered it. All words referring to the grantees in the deed are in the plural form. The record justifies but one inference, that it was the intention of the parties to the contract of sale to name the plaintiff as a grantee; that she was made a grantee and that her name was stricken without her consent after the deed had been signed and acknowledged by the grantors. In such circumstances a court of equity should grant her the relief she has asked for in the present suit. The presumption that the alteration was made at the time of or before the execution must give way to the positive evidence showing the contrary. In Otten v. Otten, 348 Mo. 674, 156 S. W. (2d) 587, we discussed the question of alteration of instruments and the presumption as to the time when alterations were made. After reviewing authorities, this court made the following comment: (156 S. W. (2d) l. c. 588 (1-4)

"This and other Missouri cases state a presumption exists that alterations and erasures of written instruments, in the absence of evidence to the contrary or suspicious circumstances, were made before or contemporaneously with the execution and delivery of the instrument and it is for the party attacking the instrument to show otherwise . . . . "

In Whetsel v. Forgey, 323 Mo. 681, 20 S. W. (2d) 523, this court did not expressly rule, but it was assumed, ▮▮▮ that if a deed of trust and note had been altered after signature and before delivery without the consent of the parties affected by the alteration, the parties would not be bound by the alteration. See 20 S. W. (2d) 1. c. 527 (6). In 3 C. J. S. 941, Sec. 30d, we read the following:

"The unauthorized substitution of a grantee in a deed, or a change in his character or capacity, is a material alteration such as to avoid the instrument. As so altered, the deed can confer no rights upon the inserted grantee as against the original grantee or his creditors." See also 2 Am. Jur. 601, Sec. 9; Dodd v. Turner, 348 Mo. 1090, 156 S. W. (2d) 901. In the case before us there were two grantees named in the deed; one name was stricken. That was a material alteration. The deed was in the possession of the grantee whose name remained on the deed. It evidently had been delivered to him after it had been signed by the four grantors. This is inferred from the fact that the deed bore a notation that it should be mailed to him. Therefore, the striking of plaintiff's name as a grantee after execution and before delivery would not affect the rights of the plaintiff who did not have possession of the deed.

We find an interesting discussion of this question in Wicker v. Jones, 159 N. C. 102, 74 S. E. 801. It was there held that a material alteration of a deed after execution without the consent of the parties affected by the alteration does not deprive the parties affected of their rights. It was also held that the party claiming that the alteration had affected his rights had the burden of proving the alteration was made after execution of the instrument. Plaintiff is in such a position in this case. We agree with the finding of the trial court as to the facts but must disagree as to his conclusions of law. In the circumstances of this case, the alteration having been made without the consent of plaintiff after the deed was signed, plaintiff's rights as a grantee in the deed were not affected and she has the right to assert her title in the property. No rights of third parties have intervened.

▮▮▮ Respondent objected to the evidence of a number of witnesses claiming that under 1887 Mo. R. S. A., 1939, the witnesses were disqualified. We need not consider this point any further than to say that we have considered only the evidence of such witnesses as were cross-examined on material matters by the respondent's counsel. The objections as to their competency were waived by cross-examination. Meffert v. Lawson, 315 Mo. 1091, 287 S. W. 610, l. c. 613 (16, 17).

▮▮▮ The second paragraph of count two of plaintiff's petition reads as follows:

"2. That Plaintiff and Defendant are the owners in fee simple title of lots eight (8) and Nine (9), Ten (10), Eleven (11) and twelve (12) in block twenty-two (22) in Holland's addition to the City of Asbury, Jasper County, Missouri, as tenants in common, and

each is the owner of an undivided one half interest in said real estate.''

Plaintiff in the prayer of the second count asks for partition of this property. There is no other reference made to lots 10, 11, and 12, either in the proceedings in the trial court or on this appeal, therefore, this opinion has no bearing on any question as to ownership of these lots.

The judgment of the trial court is, therefore, reversed and the cause remanded with directions to the trial court to enter a decree vesting the title to an undivided one-half interest to the property described in the deed to be in the plaintiff and to order partition.

It is so ordered. *Bohling* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.